|, AMY, Judge.
These consolidated matters concern a partition by licitation of mineral interests owned by the parties. The Bel Mineral case presents the question of whether the parties hold interests in common giving rise to the right of partition. On consideration of a motion for partial summary judgment, the trial court concluded that interests are held in common, namely the right to explore for, develop and reduce to possession and ownership the minerals in and under the parties’ ancestral property. The trial court found this common interest rendered partition by licitation appropriate. The plaintiffs’ authority to proceed with the partition was confirmed. In the Lacassane case, the trial court considered the question of whether a conveyance of executive interests by a co-owner of the single servitude at issue in that case would survive a partition of the servitude. The trial court concluded that the interests would not survive, unless the servitude was purchased at the partition by the owner of the servitude at the time the executive interests were created. The defendants appeal the ruling in each matter.
Factual and Procedural Background
The parties in these consolidated actions are descendants of John Albert Bel and Della Moeling Goos Bel, who according to stipulations entered in this matter “acquired significant timberlands and commercial properties in Southwest Louisiana in the latter part of the 19th Century and the first part of the 20th Century.” One of the Bels’ daughters, Katherine Bel Gard-iner Hanszen, acquired a separate piece of property in Cameron Parish in 1929, which is relevant in the companion case to this consolidated matter. Partition by licitation is at issue in each case. We first set forth the factual background of the two matters.[1]

\?Bel Mineral, LLC, et al. v. Baal Land Corporation, et al.

The Bel Mineral matter involves the property acquired by the parties’ ancestors, John and Della Bel.[2] The significant *706 acreage acquired by the Bels was left in ordinary, undivided ownership to the couple’s descendants. Through the years the family members formed trusts/corporations for the management of their respective shares of the property, some creating trusts/corporations for the separate management of the surface and mineral interests.
In 1998, the descendants sold the surface rights to a large tract of the family property to Griffin Logging. The mineral rights, however, were retained. The sale and reservation were completed through a number of documents. The plaintiffs, who hold the majority interest (referred to as an eight-ninths interest) in the servitudes at issue, formed Bel Mineral, LLC in order to manage the mineral rights. The limited liability company was formed through contributions of the family members. The other descendant, Katherine Brewer, who holds the remaining interest (referred to as a one-ninth interest), did not join Bel Mineral. Although Mrs. Brewer’s interest in the ^surface rights was transferred to Griffin Logging,[3] she transferred her interest in the minerals to Baal Minerals, Inc. In 1999. Mrs. Brewer formed Bruiere Minerals Company, transferring to it the executive and royalty rights on the mineral servitude held by Baal Minerals.
The parties to this partition action disagree over the legal classification of the mineral interests resulting from the various transfers described in the title stipulations. Also, throughout the title stipulations there are recapitulations and charts showing each party's interest, both surface and minerals, in the properties that are subject to this partition suit. Although the parties agree that those recapitulations and charts accurately show each party’s aggregate ownership, both surface and mineral, in the properties, the parties do not agree as to the legal effect of each party’s ownership. In particular, the parties do not agree whether the parties’ ownership of mineral rights constitute a "common ownership” of a "thing” within the meaning of those phrases in the Louisiana Civil Code or the Louisiana Mineral Code. The parties reserve the right to argue the legal classification of the mineral interests described in the title stipulations and the legal effect of each party's ownership of those mineral interests.
The plaintiffs filed a Petition for Partition by Licitation on February 4, 2000, alleging that Bel Mineral owns an undivided majority interest in the minerals, mineral rights, and mineral servitudes affecting the immovable property, which is scattered over several parishes. Baal Minerals, Bruiere Minerals, Katherine Brewer, and her husband, Ronald Brewer (collectively referred to as the Brewers) were named as defendants. The plaintiffs asserted that Bel Mineral and the Brewers, through various entities, own an undivided interest in the minerals, mineral rights, and mineral servitudes affecting that property. The plaintiffs sought partition by licitation due to a failure to agree on the joint management of the property. The plaintiffs asserted that the descendants share a joint right to explore for and develop the minerals underneath the ancestral property.
The Brewers contested the right to seek partition, asserting that the parties do not hold interests in common and, accordingly, there is no entitlement to partition. The Brewers asserted no interest is held in common, as various servitudes on the property resulted from the family mem *707 bers’ separate contributions to Bel Mineral during its creation and the fact that the sale to Griffin Logging was completed through various, and not identical, deeds. They also point out that the servitudes are on noncontiguous tracts of land.[4]
|4The trial court granted the motion for partial summary judgment, concluding that the parties do not own undivided shares in a single servitude, but, instead, own many separate servitudes with varying origination dates and features. However, the trial court found that all of the interests held in these various servitudes are based on a commonly held right to explore for, develop, and reduce to possession the minerals of the property in its entirety. Therefore, the trial court granted the summary judgment, confirming “Bel Mineral’s authority to partition the right to explore for, develop and reduce to possession and ownership the minerals in, on and under the Bel Estate properties .... ”

Lacassane Co. v. Jardin Minerals

The companion matter involves a tract of land in Cameron Parish acquired in 1929 by Katherine Bel Gardiner Hanszen, a child of John and Della Bel. This property was sold to the Southwest Louisiana Farm Mortgage Company, at which time Mrs. Hanszen reserved an undivided one-half interest in the minerals and mineral rights.[5] This servitude for the one-half interest has been known for purposes of this [ .^litigation as the Gardiner Servitude. Southwest Louisiana Farm Mortgage conveyed the property to Lacassane Company, Inc. The property was then conveyed to the United States of America,[6] with Lacassane Company reserving the remaining one-half of the minerals and mineral rights.[7] This second servitude has been *708 known for purposes of this litigation as the Lacassane Servitude.
The Gardiner Servitude is what is at issue for purposes of this case. Through inheritance, Mrs. Brewer, her brother, and her uncle, each acquired a one-third interest in the Gardiner Servitude. While Mrs. Brewer’s one-third interest was transferred to Jardín Minerals Company, the remaining two-thirds interest was transferred to Waterfowl, LLC. At some point, Mrs. Brewer granted the executive and royalty rights of Jardín Minerals’ one-third interest to Bruiere Minerals Company.
|fiThe Lacassane matter was instituted when Lacassane Company and Waterfowl filed a Petition for Partition by Licitation, seeking partition of the Gardiner Servitude. As the matter involved a co-owned servitude, that owned by Waterfowl and Jardín, the issue before the court was whether the executive interests granted to Bruiere Minerals would survive the partition. The Brewers contended that the executive interests granted are real rights and will survive a partition.
Although the matter was brought by both Lacassane and Waterfowl, pursuant to a Motion to Withdraw as Plaintiff without Prejudice, Lacassane Company was permitted to withdraw from the litigation. Accordingly, only the issue regarding the partition of the Gardiner Servitude remained before the court. The Brewers, through Jardín Minerals and Bruiere Minerals, filed a motion for summary judgment asserting that the executive and royalty rights will survive partition. The motion was denied. Subsequently, Waterfowl filed a cross motion for summary judgment seeking the partition and, through that partition, the termination of the executive interests granted to Brui-ere.
The trial court granted the summary judgment, concluding that the Civil Code dictates that the “executive rights ... will only survive the partition if the purchaser at the partition sale is also the present owner of the servitudes burdened by the executive right.”
The Brewers appeal in each case, assigning the following as error:
1. The trial court erred, in holding that the owners of admittedly separate and distinct mineral rights, are entitled to seek partition of what the court deemed to be a common “thing,” i.e., the right to explore for, develop and produce minerals. Such ruling is expressly contradictory to Louisiana law. LSA-R.S. 31:169.
2. The trial court erred in holding that the rights of Bruiere would be affected by any partition which was ordered by the court. LSA-CC Art. 812.
|73. In light of its holding described in the first assignment of error, the trial court erred in holding that Lacassane could voluntarily withdraw without prejudice from the suit it filed, after answer. LSA-CCP Art. 1671.
Discussion

Bel Mineral

The Brewers question the trial court’s conclusion that separate servitudes exist, *709 but that the parties also share a common right to explore for and reduce to possession and ownership the minerals on the ancestral property in general.[8] They contend that a finding of separate servitudes precludes a finding of co-ownership or commonality of interests. Without such a commonality of interest, they argue, there is no right to partition. In particular, they assert that La.R.S. 31:169 indicates that co-ownership, and therefore partition, is not permissible in this instance. Entitled “Those who are not co-owners of mineral rights,” La.R.S. 31:169 provides:
Co-ownership does not exist between the owner of a mineral right and the owners of the land subject to the right or between the owners of separate mineral rights.
(Emphasis added.) The Brewers do not dispute that the land was originally held by the family members in ordinary, undivided ownership. However, they contend that only “separate mineral rights” can be found to exist due to the noncontiguous nature of the tracts of land on which the servitudes are held, the various conveyances establishing Bel Mineral, and the completion of the sale of surface interests to Griffin Logging through various deeds.
The plaintiffs disagree, asserting that the joint fashion in which the property was inherited by the parties created a joint right to explore and reduce to possession Land ownership. They contend that the various unilateral actions by the individual parties in transferring various rights has not destroyed this common right.
In ruling, the trial court framed the question at issue as follows:
The court is in agreement with the conclusionary statements of the motion. The parties do not own undivided shares of a single mineral servitude but do, in fact, own many separate servitudes, with different dates of origination and other different features. Nevertheless, all of the mineral rights discussed herein rest upon the Louisiana concept of a mineral servitude which is the right to explore for, develop and reduce to possession the minerals underlying a tract of land. It, thus, becomes solely this question of law which the court must decide: Can owners of the right to explore, develop and reduce to possession under a certain tract seek partition by licitation even though the rights are not identical? (No one takes the position that this partition can be “in kind”).[9]
*710 In our consideration of this matter, we first turn to the principles of the Louisiana Civil Code and the Mineral Code. La.R.S. 31:2 sets forth the framework for application of the Mineral Code, instructing:
The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.
|9The relationship between the Mineral Code and the Civil Code, described above, is illustrated in Steele v. Denning, 456 So.2d 992 (La.1984). Although Chapter Ten, Part Three of the Mineral Code addresses “Partition of Land and its Effect on Mineral Rights,” the Louisiana Supreme Court observed in Steele that the statutes making up Part Three do not indicate who has a right to initiate a partition in an instance where land is burdened by a mineral right. Rather, the articles address only the procedure to be followed. The supreme court further noted that the Mineral Code “presupposes the right to partition, as provided in the Civil Code, and only specifies the procedures to be employed in effecting the partition (i.e., ‘[i]f the owner of a mineral right or interest therein is made a party to an action for partition of the land subject to his right-’ La.R.S. 31:180).” Id. at 996.
The principles of the Civil Code were found to be authoritative when, as in Steele, the Mineral Code does not specifically address whether a person owning an undivided interest in land, without associated mineral rights, has a right to seek partition by licitation of both the land and the mineral rights. Steele, 456 So.2d 992. The supreme court observed that the Civil Code provides for partition so that owners of a thing in common can do nothing against the desires of the co-owner of a thing. Id. “Consequently, when co-owners cannot agree upon the use of their property, partition is the relief provided by the Civil Code.” Id. at 997.
The supreme court noted, however, that, under then La.Civ.Code art. 1289,[10] the demand for partition must involve a “thing held in common.” Steele, 456 So.2d 992. The court concluded that a plaintiff owning an interest in land without the attendant right to explore for minerals and reduce them to possession/ownership, does |innot hold in common any mineral rights with either a defendant who owns the mineral servitude or a full interest co-owner, who also retains the right to explore for minerals. Referencing the principle that Louisiana does not recognize a separate estate in minerals, established in both the jurisprudence and La.R.S. 31:6,[11] the supreme court further stated:
That does not, however, change the fact that the creation of a mineral servitude effectively fragments the title such that different elements of ownership are held by different owners (i.e., between the landowner and the mineral servitude *711 owner), and there is not any “thing held in common” between them. Defendant [ ], a mineral servitude owner, and all of the other defendants herein, own the right to explore for minerals and reduce them to possession and ownership. La. R.S. 31:21. Plaintiffs own only an interest in the land, specifically without the right (in common with defendants) to explore for minerals and reduce them to possession and ownership.
Id. at 998-99. This concept is reflected in La.R.S. 31:169, which provides that “Co-ownership does not exist between the owner of a mineral right and the owner of the land subject to the right or between the owners of separate mineral rights.” It is this portion of the Mineral Code which the Brewers contend prohibits partition in this case. They argue that only “separate mineral rights” are owned in the present case.
While the fact situation addressed by the supreme court in Steele is reflected in La.R.S. 31:169, the question of differing estates is not the one faced by this court in the present case.[12] Steele does not address whether various servitudes constitute ^“separate mineral rights” under the terms of La.R.S. 31:169. Rather, Steele is important for the following proposition:
[T]he Mineral Code does not create the right to institute a partition action. Rather, it is the Civil Code which creates the right. The Mineral Code merely deals with the procedure for partitioning mineral rights where the right to do so is otherwise provided for. Where there is such a right, plaintiffs are correct that the Mineral Code provides that the mineral rights may be partitioned with the land if the mineral right owner is made a party to the action.
Steele, 456 So.2d at 999.[13]
Given this framework, we turn to the Civil Code for general direction regarding the right to partition. To begin, Article 797 of the Civil Code provides for ownership in indivisión or co-ownership.[14] Fur *712 thermore, Article 807 of the Civil Code provides for remedy by partition for co-owners, stating:
hi.No one may be compelled to hold a thing in indivisión with another unless the contrary has been provided by law or juridical act.
Any co-owner has a right to demand partition of a thing held in indivisión. Partition may be excluded by agreement for up to fifteen years, or for such other period as provided in R.S. 9:1702 or other specific law.[15]
Speaking as to the favorable treatment afforded the right of partition, the supreme court in Campbell v. Pasternack Holding Co., Inc., 625 So.2d 477, 480 (La.1998) (citations and footnote omitted), explained:
The need to partition stems from the inconvenience of co-management, namely the requirement of unanimous consent of co-owners in managing commonly held property. With certain exceptions, each owner has the right to oppose the use of the property by the other. Consequently, co-owners who cannot agree on the use of the property are by the Civil Code specifically afforded the right to seek partition. Needless to say, then, partition is favored under Louisiana law and this Court’s jurisprudence.
Important for our consideration in the present case is the supreme court’s observation that: “The right to partition rests on the parties holding interests in common. This commonality is the sine qua non for a co-owner’s right in this regard.” Id. We also note that La.R.S. 31:172 specifically provides that: “Mineral servitudes and royalties are subject to partition.”
In Campbell, 625 So.2d 477, a case relied upon by the Bel Mineral plaintiffs, the supreme court found that a co-owner of an undivided interest in property without mineral rights could demand partition of the land only. This was found to be true, even though some of the co-owners held title in both the land and the mineral rights. | isThe defendants asserted in that case that there was no commonality of interest as different estates were held by the parties. While true that the case did not involve the partition of mineral rights, the supreme court ordered partition when the plaintiff inherited the right to partition from her ancestor in title. The independent acts of the co-owners were not found to have extinguished this right. The supreme court noted that “limitations on the right to partition, and laws in derogation of established rights, are to be strictly construed.” Id. at 483.
In our determination of whether the parties have common interests, we turn to consideration of the rights held. The Title Stipulations provide the court with a history of the transfers associated with the property and the creation of the servitudes at issue. The property is described in various exhibits to the stipulations. On each of these parcels of land, the parties are designated as owners, .in varying percentages and entities. Importantly, in every instance, Bel Mineral and the Brewers, in some capacity, own an interest in a percentage of the minerals. These separate servitudes, recognized by the trial court, and acknowledged by the parties, were created by various parties and *713 through different instruments. However, they were not created by all of the family members acting together. Thus, according to La.R.S. 31:164, the rights of those servitudes cannot be exercised without the consent of fellow co-owners. The statute provides:
A co-owner of land may create a mineral servitude out of his undivided interest in the land, and prescription commences from the date of its creation. One who acquires a mineral servitude from a co-owner of land may not exercise' his right without the consent of co-owners owning at least an undivided eighty percent interest in the land, provided that he has made every effort to contact such co-owners and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with another co-owner. A co-owner of the land who does not consent to the exercise of such rights has no liability for the costs of development and operations, except out of his share of production.
| uThis statute demonstrates the concept that a unilateral action does not destroy shared rights and responsibilities of joint ownership or possession.
We find no indication in the Mineral Code, the Civil Code, or jurisprudence that a party, acknowledged to be a co-owner at some point in time, can unilaterally fractionalize his or her title thereby destroying the larger concept of joint ownership or possession. Absent this type of positive authority, we conclude that the transfers could not affect the right to partition attendant to the commonly held rights inherited by the parties. Accordingly, we find no error in the granting of the summary judgment or the trial court’s ruling that “Bel Mineral’s authority to partition the right to explore for, develop and reduce to possession and ownership the minerals in, on and under the Bel Estate Properties, which properties are identified in the Stipulations filed in this proceeding, are confirmed.”

Lacassane

This companion case addresses the partition of the Gardiner Servitude, described above in the factual background. The Gardiner Servitude is owned two-thirds by Waterfowl, LLC, and one-third by Jardín Minerals. Prior to the petition for partition, Jardin Minerals conveyed its executive rights[16] and royalty rights[17] to | ^Bruiere Minerals Co. At issue is whether the executive interests assigned to Bruiere will survive the partition. The basis of the Brewers’ argument stems from La. Civ. Code art. 812, which provides: “When a thing held in indivisión is partitioned in kind or by licitation, a real right burdening the thing is not affected.” They assert that the executive interests assigned to Bruiere should be viewed as real rights, *714 ones that, by application of Article 812, will survive the partition.[18]
Considering the Civil Code further, Article 815 provides that: “When a thing is partitioned by licitation, a mortgage, lien, or privilege that burdens the share of a co-owner attaches to his share of the proceeds of the sale.” Furthermore, Comment (b) of Article 815 indicates that:
This provision does not apply when a co-owner has consented to the establishment of a predial servitude on his undivided share or on the entire estate. In such a case, upon partition by licitation, the right granted by the co-owner may be extinguished or it may burden the whole of the estate.
It is clear in this case that the executive interests at issue were conveyed to Bruñ-ere Minerals upon that portion of the servitude owned by Jardín Minerals. This type of assignment could not affect the remaining interest in the servitude owned by Waterfowl.
Furthermore, La.Civ.Code art. 718 provides:
If the estate is partitioned by licitation and the co-owner who consented to the establishment of the predial servitude acquires the ownership of the whole, the servitude burdens the entire estate as if the co-owner had always been sole owner. If the entire estate is adjudicated to any other person the right granted by the co-owner is extinguished.
|1fiCiting this article, the trial court concluded that the executive interests in this case will be destroyed, unless the servitude is purchased by the owner of the servitude presently burdened by the servitude.[19]
Our consideration of the above articles indicates that because the executive interests are rights created exclusively by the actions of the Brewers, through Jardín Minerals, and without consent of the remaining co-owner of the servitude, these rights will be extinguished by the partition. However, in the event Jardín Minerals purchases the entire servitude at the *715 partition, La.Civ.Code art. 718 indicates that the assignment of executive interests ■will survive the partition.

Dismissal Without Prejudice

As seen from the factual background above, the Lacassane suit was instituted by the Lacassane Company, owning the “Lacassane Servitude” or one-half interest in [17the mineral and mineral rights of the Katherine Bel Gardiner Hanszen property, and by Waterfowl, LLC. Waterfowl owns two-thirds interest in the minerals and mineral rights of the Gardiner Servitude, which represents the remaining fifty-percent interest in the minerals and minerals rights of the Katherine Bel Gardiner Hanszen property. Jardin Mineral Company owns the remaining one-third interest in the Gardiner Servitude. Prior to the hearing on the matter, the plaintiffs filed a Motion to Withdraw as Plaintiff without Prejudice, seeking the withdrawal of Lacassane as a party and doing so in an attempt to prevent the Lacassane Servitude from being partitioned. It asserted in the motion that: “Lacassane and Waterfowl agree on the management and development of the mineral interests and rights in the northern part of the Refuge. They thus believe it will be sufficient if this Court partitions by licitation the mineral interests and rights co-owned by Waterfowl, Jardin and Brui-ere without reaching the question of whether Lacassane also is a co-owner.” The plaintiffs urged that the withdrawal be without prejudice. The Brewers opposed the motion, arguing that any dismissal should be with prejudice. The matter was heard prior to the hearing on the motion for summary judgment, with the trial court granting the dismissal without prejudice.[20]
On appeal, the Brewers do not question the granting of the motion per se, but argue that the dismissal is inconsistent with the merits of the trial court’s ruling in Lacassane. It asserts that, if this court reverses the summary judgment granted in favor of the plaintiffs, the issue becomes moot. However, it contends that, if the 11ssummary judgment is affirmed in this court and the matter remanded, presumably for partition proceedings, then the appellants will be forced to seek compulsory joinder of Lacassane. The Brewers state in their brief to this court that: “[I]t is obvious that Lacassane would be an indispensable party to any partition of the mineral rights at issue in that suit, as those rights have been characterized by the trial court.” It contends that the trial court’s ruling that there is a common right to explore would follow through to this case, requiring that Lacassane own a common right to explore. It contends that Waterfowl cannot proceed with a partition by licitation on its own as it is not the full owner. The plaintiffs contend that, for this matter, the Gardiner and Lacassane Servitudes are completely separate servi-tudes, thus, no joint right to explore.
Again, there is no ruling from the trial court indicating anything other than that the Gardiner and Lacassane Servitudes are two completely separate servitudes. Lacassane does not allege to own any portion of the Gardiner Servitude. Lacassane holds no proportionate interest in any of the Gardiner Servitude, as there might be *716 in the Bel Mineral case. This case differs from Bel Mineral, as the Lacassane Servitude was created by the full owner of the property while acting as the owner of the land in its totality. This matter should not be confused with the servitudes at issue in the companion case.
Furthermore, with regard to a motion for voluntary dismissal without prejudice filed after the appearance of a defendant, La.Code Civ.P. art. 1671 provides:
A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. If the application is made after such appearance, the court may refuse to grant the judgment of dismissal with prejudice.
|19On the face of the article, the decision to dismiss a party without prejudice is left to the trial court’s discretion. Turner v. Leslie, 96-2288 (La.12/6/96), 684 So.2d 395.
We find no abuse of the trial court’s discretion in permitting Lacassane to withdraw from the suit without prejudice. As observed above, the trial court’s rulings on the two suits at issue are not to be confused. While the trial court found a common right to explore in Bel Mineral, no such shared right was found to exist in Lacassane. The dismissal is maintained.
DECREE
For the foregoing reasons, the partial summary judgment granted by the trial court in Lacassane Company, Inc., et al. v. Jardin Minerals Co., et al., is affirmed. All costs of this matter are assigned equally to the appellants, Jardín Minerals Co. and Bruiere Minerals Co.
AFFIRMED.

. These consolidated matters have been discussed collectively under the docket number and heading of Lacassane Co., Inc. & Waterfowl LLC v. Jardin Minerals Co. For the decree related to the companion case,0 see Bel Mineral, LLC v. BAAL Land Corp., 02-1494 (La.App. 3 Cir.5/28/03); 2003 WL 21229604, 847 So.2d 716.

. The facts of this matter are derived from the detailed stipulations entered into the record by the parties. The document, entitled "Bel Mineral, LLC Title Stipulations,” contains in *706 formation regarding the chain of title of the each of the parcels at issue and the interests held by the parties. In doing so, the parties frame the question before the court, stating:

. Prior to the conveyance to Griffin Logging, Mrs. Brewer held her interest in the surface right to the property through Baal Land Corporation.

. The Mineral Code, La.R.S. 31:1, et seq., provides the following presumptions when servitudes are established on contiguous and noncontiguous tracts:
§ 63. Presumption arising from separate description of tracts forming continuous body of land
A single mineral servitude is created by an act that affects a continuous body of land although individual tracts or parcels within the whole are separately described.
§ 64. Presumption when servitudes created on noncontiguous tracts
An act creating mineral servitudes on noncontiguous tracts of land creates as many mineral servitudes as there are tracts unless the act provides for more.

. The stipulations filed in the record indicate that the Gardiner Servitude was created in the sale of the Lacassane property as follows:
It is understood and agreed that there is excepted from this sale and reserved by vendor an undivided one-half interest in all oil, gas and other minerals, and mineral rights in and under, and that may be produced from the above described lands, or any parts thereof, with rights of ingress and egress for purposes of exploration and development.

. The property is now part of the Lacassane Refuge.

. Lacassane Co., Inc., reserved the servitude as follows:
Reserving unto vendor, its successors, legal representatives and assigns, and specifically excepting from this sale all the oil, gas, sulphur and other minerals in, on and under said land, together with the right of investigating, exploring!,] prospecting, drilling and mining for and producing said oil, gas, sulphur and other minerals, laying pipe lines, building tanks, roads and canals, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, store, transport, and manufacture said minerals, and housing the employees necessary for said purposes, which rights shall remain in force for a term of ten years from date of the deed conveying said land and as long thereafter as oil, gas, sulphur or other minerals is produced from said land, or so long thereafter as vendor shall conduct drilling or reworking operations thereon with no cessation or more than sixty consecutive days until production results, and if production results, so long as such mineral is produced.
*708 Provided further that at the end of said ten year period or reservation, if not extended as hereinabove provided, or at the termination of any extended period in case the operations have not been carried on after said ten year period, as hereinabove provided, the right to mine, produce and market said oil, gas, sulphur and other minerals shall terminate at the end of said ten years, and the complete fee title to said land shall thereby become vested in the United States. Provided that forty per cent (40%) of one-eight (1/8) royalty of all oil, gas, sulphur and other minerals so removed shall be paid to the United States of America until the total royalties so paid to the United States shall equal the purchase price of $51,774.

. The nature of a mineral servitude is described in the Mineral Code as follows: “A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership.” La.R.S. 31:21.

. The trial court continued, observing Civil Code and Mineral Code guidance, along with relevant jurisprudence, before concluding:
The underlying rationale behind the right to partition is that it would be against public policy for property to be taken out of commerce and rendered unusable because of fragmented ownership. There is no logical reason why this principle should not also apply to mineral servitudes attached to a piece of land. Whenever servitudes become too numerous and fragmented, chances of development diminish or disappear altogether. Of course, if the multiple owners acted in concert, development would not be impeded but the law is practical in recognizing that human nature does not behave in such an ideal fashion. On the other hand, a purchaser at a sale by licitation, even if he buys servitudes of various ages and descriptions, would be able to coordinate the servitudes in order to realize a maximum potential of the mineral rights. For these reasons, the court concludes that the partition by licitation sought by the plaintiffs herein between the various servitude owners can proceed.

. See now La.Civ.Code art. 807, which refers to a “thing held in indivisión.”

. La.R.S. 31:6, entitled "Right to search for fugitive minerals; elements of ownership of land,” provides:
Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership.

. Similarly, the question posed in the present case is dissimilar to that in Starr Davis Oil Co. v. Webber, 218 La. 231, 48 So.2d 906, 907 (1950), a pre-Mineral Code case in which the supreme court posed the issue before it as:
The primary question for determination is whether one having a fractional mineral interest is the coproprietor of the landowners, who have retained the remainder of the mineral rights, as it is essential to the action of partition that the parties thereto hold the property in common.
Again, the ownership of different estates is not presently at issue. Rather, it is the possession of various mineral servitudes that is at issue.

. In a footnote to the above portion of the Steele opinion, the supreme court remarked:
Plaintiffs’ argument would be correct, for example, in this case, if a full owner of an undivided interest in the property, like Den-ning, had brought the partition action. Denning, being a full owner of the land (with the attendant mineral rights), holds elements of ownership in both the land and the mineral rights, and thus, owns "a thing held in common” with all of the other co-owners. As such, unlike plaintiffs here, she has the right to petition for partition by licitation of both the land and the mineral rights. Patrick v. Johnstone, 361 So.2d 894 (La.App. 2d Cir.1978). And then, "if ... the land is judicially partitioned” (La. R.S.31.-178), with which the mineral right owner being made a party to the partition action (La.R.S. 31:179 & 180), and the appropriate appraisals are made in accordance with law (La.R.S.31:180-184), the mineral right owner will share in the proceeds in proportion to the value of his interest (La.R.S.31:183) and his mineral rights would be extinguished by the sale of the property resulting from the partition action. La.R.S. 31:185.
Steele, 456 So.2d at 999, n. 8.

.La.Civ.Code art. 797 provides:
Ownership of the same thing by two or more persons is ownership in indivisión. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal.

. Although La.Civ.Code art. 810 provides for remedy by partition in kind, the parties agree that the appropriate remedy in this case, if any, is partition by licitation. La.Civ.Code art. 811 provides:
When the thing held in indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the co-owners in proportion to their shares.

. The executive right is defined in the Mineral Code as:
The executive right is the exclusive right to grant mineral leases of specified land or mineral rights. Unless restricted by contract it includes the right to retain bonuses and rentals. The owner of the executive right may lease the land or mineral rights over which he has the power to the same extent and on such terms and conditions as if he were the owner of a mineral servitude.
La.R.S. 31:105.

. The right associated with a mineral royally is described as follows:
A mineral royalty is the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another. Unless expressly qualified by the parties, a royalty is a right to share in gross production free of mining or drilling and production costs.
La.R.S. 31:80.

. La.Civ.Code art. 813 further states: "When a thing is partitioned in kind, a real right that burdens the share of a co-owner attaches to the part of the thing allotted to him.”

. As we find it appropriate to do here, the trial court reviewed the relevant portions of the Civil Code, finding:
On the basis that an executive right is classified as a real right, it is defendant’s position herein that Article 812 of the Civil Code would apply and that the executive right would survive a partition sale. The language of 812 is as follows: "When a thing held in indivisión is partitioned in kind or by licitation, a real right burdening the thing is not affected." A reading of all of the articles in that title, particularly Articles 813 through 815 show clearly that Article 812 contemplates a real right which burdens the entire thing held in indivisión. In this case, the executive right burdens less than the whole of the servitudes. According to Article 813, if the partition were in kind, the real right would attach to the share of the co-owner whose interest was already burdened. Article 815 provides that when the share of the co-owner is burdened by a mortgaged] lien[,] or privilege, those real rights will attach to his share of the proceeds of the sale. However, Article 718 of the Civil Code provides: "If the estate is partitioned by licitation and the co-owner who consented to the establishment of the predial servitude acquires the ownership of the whole, the servitude burdens the entire estate as if the co-owner had always been sole owner. If the entire estate is adjudicated to any other person, the right granted by the co-owner is extinguished.”
It is the conclusion of this court that the executive rights which exist on some of the servitudes subject to this partition suit will only survive the partition if the purchaser at the partition sale is also the present owner of the servitudes burdened by the executive right. For these foregoing reasons, the motion for partial summary judgment is denied.

. It is unclear whether the ruling on the dismissal was properly presented for appeal as the Motion for Appeal filed in Lacassane indicates that: "Defendants desire to appeal the Judgment of this Honorable Court granting the Cross Motion for Partial Summary Judgment filed herein by plaintiff, Waterfowl, LLC, with Notice of Judgment dated Septem-her 6, 2002.” The partial summary judgment was designated as a final judgment pursuant to La.Code Civ.P. art. 1915(B)(1). There is no indication that the dismissal, instituted by separate motion, was included in the September 6, 2002 ruling. For completeness, we have considered the dismissal argument.