WHIPPLE, C.J.
lain this appeal, the adoptive mother of the minor child challenges the trial court’s judgment denying her request for modification of a stipulated judgment of custody rendered in 2005, through which she and her female partner were granted joint custody of her adoptive son, and further denying her request to relocate with the child to the state of Texas. For the following reasons, we affirm the judgment of the trial court. Additionally, the adoptive mother’s “Motion for Leave to Attach Additional Documents” is denied as moot.
FACTS AND PROCEDURAL HISTORY
Jennifer Thomas (now Nolan) and Jacqueline Calandro were involved in an intimate relationship for seventeen years, during which time they lived together in Walker, Louisiana. During their relationship, Nolan underwent several unsuccessful in vitro fertilization procedures. Thereafter, by a judgment of adoption dated May 2, 2005, Nolan adopted the minor child whose custody is at issue, who was sixteen months old at the time of the adoption. However, the child had been residing with Nolan and Calandro since the day after he was born. At the time that Nolan adopted the child, she and Calandro had been involved in a relationship for six years.
On May 12, 2005, ten days after the adoption, Nolan and Calandro jointly filed a “Motion to Implement and Establish Joint Custody” in the district court below, through which Nolan sought a court order allowing her to jointly share the “legal care, custody and control” of her adoptive son with Calandro. By judgment dated May 12, 2005, Nolan and Calandro were granted joint legal care, custody, and control of the minor child and were further designated as co-domiliciary parents.
| .¡Thereafter, Nolan and Calandro resided together with the minor child in Calan-dro’s home in Walker, Louisiana until March of 2015, when Nolan moved out of the home. On June 23, 2015, approximately three months after ending her relationship with Calandro, Nolan married Scott Nolan, a colonel in the United States Army stationed in Austin, Texas.
On February 24, 2015, shortly before Nolan moved out of Calandro’s home, Ca-landro filed a Rule to Show Cause, wherein, based on concerns that Nolan planned to relocate outside of the state of Louisiana with the minor child, she sought an order prohibiting either party from removing the child from the state and allocating physical custody of the minor child to her and Nolan on a week-to-week basis. An order was entered on March 2, 2015, prohibiting the parties from removing the minor child from the state of Louisiana until a hearing on the issue of physical allocation of custody could be held.[1]
Nolan then filed a “Rule for Sole Custody and to Relocate the Minor Child” *579 on September 28, 2015.[2] In the rule, Nolan asserted that a ^material change in circumstances had occurred since the rendition of the 2005 stipulated judgment in that she and Calandro were no longer intimate partners, that she intended to relocate to Texas and that she was the only legal parent of the child. Thus, Nolan sought to have the 2005 stipulated judgment modified to reflect that she is the child’s only legal parent, to grant her sole custody of the child, and further that she be allowed to relocate with the child to the state of Texas.
A hearing on the rules was conducted on November 4, 2015. By judgment dated November 17, 2015, the trial court denied Nolan’s request to modify the award of joint custody to sole custody and further denied her request to relocate with the child to the state of Texas. The court further designated specific periods of physical custody for the parties in a Joint *580 | ^Custody Plan attached to the judgment.[3]
Prom this judgment, Nolan appeals, contending in a single assignment of error that the trial court erred in: (1) finding the May 12, 2005 stipulated judgment valid; (2) applying the incorrect burden of proof to her request to modify the prior custody judgment; and (3) denying the child’s only parent the right to relocate with the child, to foster a third party’s interest. Nolan also filed with this court a “Motion for Leave of Court to Attach Additional Documents,” which was referred to the panel hearing the merits of this appeal and which we will address first.
MOTION FOR LEAVE OF COURT TO ATTACH ADDITIONAL DOCUMENTS
Nolan filed with this court a “Motion for Leave to Attach Additional Documents,” seeking leave to attach to her appellate brief the “original petition,” which was actually a motion, through which she and Calandro sought to establish joint custody of the minor child, and the May 12, 2005 stipulated judgment granting the parties joint custody. Nolan avers that this pleading and the resulting judgment are “integral parts of this suit’s record and should be available for this [cjourt to review when considering this matter.”
At the outset, we note that an appellate court must render its judgment upon the record on appeal, LSA-C.C.P. art. 2164, and the appellate briefs of the parties are not a part of the record on appeal. Augustus v. St. Mary Parish School Board, 95-2498 (La.App. 1st Cir. 6/28/96), 676 So.2d 1144, 1156. Thus, this court has no authority to consider on appeal facts referred to in appellate briefs or in exhibits attached thereto, if those facts are not in the record on appeal. Augustus, 676 So.2d at 1156.
However, in the instant case, the documents that Nolan seeks to attach to her appellate brief, ie., the 2005 “Motion to Implement and Establish Joint Custody” and the stipulated judgment, are actually part of the record on appeal. Thus, they are already properly before us for consideration in rendering an opinion in this appeal. Because the documents are already a part of the appellate record and have been considered as such by this court, we deny as moot Nolan’s motion to attach them to her appellate brief.
VALIDITY OF THE MAY 12, 2005 STIPULATED JUDGMENT
On appeal, Nolan first contends that the May 12, 2005 stipulated judgment is an absolute nullity pursuant to this court’s prior decision in In re Melancon, 2010-1463 (La.App. 1st Cir. 12/22/10), 62 So.3d 759, amended on rehearing, 2010-1463 (La.App. 1st Cir. 4/7/11), 102 So.3d 65, and that the trial court erred in failing to so rule.
At the outset, we note that the May 12,2005 judgment is a stipulated judgment between the parties. A consent or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balanc *581 ing his hope of gain against his fear of loss. Leonard v. Reeves, 2011-1009 (La.App. 1st Cir. 1/12/12), 82 So.3d 1250, 1261; see also LSA-C.C. arts. 3071 and 3072. Its binding force arises from the voluntaiy acquiescence of the parties rather than the adjudication by the court. Leonard, 82 So.3d at 1261.
Thus, generally, there is no right to appeal a stipulated or consent judgment, see Mill Creek Homeowners Association, Inc. v. Manuel, 2004-1385 (La.App. 1st Cir. 6/10/05), 916 So.2d 268, 270, because “[a]n appeal |7cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him.” LSA-C.C.P. art. 2085; Guidry v. Sothern, 98-1152 (La.App. 1st Cir. 5/14/99), 734 So.2d 928, 930.
Moreover, the only remedy available to a party seeking to set aside a final judgment is a claim in nullity. Guidry, 734 So.2d at 930. The nullity of a final judgment may be demanded for viees of either form or substance. LSA-C.C.P. art. 2001. A vice of form renders the judgment an absolute nullity.[4] See LSA-C.C.P. art. 2002 & Official Revision Comments-1960, comment (f). Additionally, with regard to a consent judgment, which is a bilateral contract between the parties, a consent judgment may be absolutely null or void ab initio if it contains a condition that is contra bonos mores. Hebert v. Hebert, 96-2155 (La.App. 1st Cir. 9/19/97), 700 So.2d 958, 960; see also LSA-C.C. art. 2030 (“[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral”) and LSA-C.C. art. 3082 (“[a] compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts”).
While relatively null judgments must be attacked directly and within the time limitation set forth in LSA-C.C.P. art. 2004, absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. Hebert, 700 So.2d at 959. Such a collateral attack may include the assertion of the absolute nullity of a judgment as an affirmative defense, |8such as in an answer, by exception, or by contradictory rule or motion.[5] Leonard, 82 So.3d at 1260.
*582 In support of her argument that the May 12, 2005 stipulated judgment is an absolute nullity, Nolan contends that the judgment “should never have been signed by the district court” because there had been no determination pursuant to LSA-C.C. art. 133 that her sole custody of the minor child “would cause substantial harm to the child.”
Custody matters are governed by Chapter 2, Section 3 of the Louisiana Civil Code. Pursuant to LSA-C.C. art. 132 therein, parents may consent to a custody arrangement as follows:
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
On the other hand, with regard to a court’s award of custody to a non-parent, LSA-C.C. art. 133 provides as follows:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or ^otherwise to any other person able to provide an adequate and stable environment. [Emphasis added.]
In support of her contention that custody of the minor child herein should have been governed by LSA-C.C. art. 133 at the time the 2005 stipulated judgment was rendered and that it is accordingly absolutely null for lack of compliance with that article, Nolan relies upon this court’s opinion in Melancon wherein this court found that a situation involving a parent’s eon-sent to shared custody between the parent and a non-parent was governed by LSA-C.C. art. 133, rather than article 132. In re Melancon, 62 So.3d at 764. Citing Melan-con, Nolan asserts in her appellate brief that the 2005 stipulated judgment awarding her and Calandro joint custody should have never been signed because at the time of its rendition, no right of action was presented to the court, and the requested relief was not supported by the law of this state. Thus, she contends that the May 12, 2005 stipulated judgment is “illicit and contra bonos mores” and that the trial court erred in failing to recognize that it was absolutely null and void ah initio. However, in light of more recent Louisiana Supreme Court jurisprudence, we are constrained to conclude that the above statements in Melancon cannot be relied upon to support Nolan’s position.
In Melancon, a minor child was conceived by artificial insemination and had only one known biological parent, her mother. Since the child’s birth, the child and her biological mother resided with the petitioner, who was also a woman. The petitioner filed an unopposed petition to share custody of the child with the child’s biological mother and attached to the petition the affidavit of the biological mother, in which she consented to joint custody of the minor child between herself and the petitioner. Thus, a consent judgment of joint custody was submitted to the trial court. In re Melancon, 62 So.3d at 761, 763.
However, the trial court, on its own motion, raised and maintained an exception of no cause of action on the basis that *583 the pleadings contained no allegation that an award of sole custody to the child’s biological mother would cause substantial harm to the child, as required pursuant to LSA-C.C. art. 133 for an award of custody to a non-parent. In re Melancon, 62 So.3d at 763.
On appeal, the petitioner therein argued that since there was no dispute between her and the biological mother regarding the best interest of the child being served by the award of joint custody, the trial court should have awarded her joint custody pursuant to LSA-C.C. art. 132, which allows a parent to consent to a custodial arrangement. As to any claim under LSA-C.C. art. 132, this court sua sponte raised and maintained an exception of no right of action. Specifically, this court held that LSA-C.C. art. 132 discloses causes of action for shared or joint custody only to legal parents. Noting that the petitioner was not a legal parent, the court held that she was “not a member of the class of persons that has a legal interest in the subject matter of the litigation.” In re Melancon, 62 So.3d at 763. Furthermore, with regard to any claim pursuant to LSA-C.C. art. 133, this court affirmed the trial court’s judgment maintaining the exception of no cause of action, noting that the petitioner had failed to allege that sole custody by the parent would result in substantial harm to the child.[6] In re Melancon, 62 So.3d at 763-764. In so ruling, as asserted by Nolan, the court in Melancon expressly concluded (in 2011) that “the law today simply does not permit a parent to bjshare custody with a non-parent without a showing of substantial harm to the child.” In re Melancon, 62 So.3d at 764.
However, the recent Louisiana Supreme Court decision in Tracie F. v. Francisco D., 2015-1812 (La. 3/15/16), 188 So.3d 231, casts serious doubt on the viability or validity of that statement in Melancon. In Tracie F., the mother and father of a minor child and the maternal grandmother had all consented to a judgment whereby joint custody was awarded to the father and the grandmother, with the grandmother designated as the domiciliary parent.[7] Thereafter, the father filed a rule to change custody, seeking sole custody or, alternatively, to be named the domiciliary parent. While the trial court modified the prior stipulated judgment of joint custody to award sole custody to the father, the appellate court reversed and reinstated the stipulated award of joint custody. Tracie F., 188 So.3d at 236-238.
On review, the Louisiana Supreme Court first addressed the appropriate burden of proof that a parent must meet when the parent consents to an award of joint custody between the parent and the non-parent and later petitions to change the stipulated award. Rather than questioning a parent’s right to consent to a stipulated judgment of joint custody with a non-parent, the Louisiana Supreme Court clearly recognized a parent’s right to consent to such a judgment wherein the parent shares legal custody of the child with a non-parent. Noting that a stipulated judg *584 ment of custody is a judgment rendered when the parties consent to a custodial arrangement and no evidence of parental fitness is taken, the Louisiana Supreme Court | ^acknowledged that “pQndeed, it is foreseeable that because of youth, impecu-nity, or other life situations, a parent might consent to a non-parent serving the role of a domiciliary parent.”[8] Tracie F., 188 So.3d at 239 & 242. (Emphasis added). The Louisiana Supreme Court then articulated the appropriate burden of proof where “the parent has been fortunate enough to find such a person with whom to share joint custody,” but later petitions to change the stipulated award of joint custody between the parent and non-parent. Tracie F., 188 So.3d at 242-245. (Emphasis added). The Louisiana Supreme Court made no indication that such a stipulated judgment of joint custody between a parent and non-parent would be void ab initio as being contra bonos mores. See Tracie F., 188 So.3d at 242-245.
Based on the reasoning set forth by the Louisiana Supreme Court in Tracie F. and the Court’s articulation of the appropriate burden of proof a parent must establish when seeking modification of a stipulated judgment (i.e„ a stipulated judgment consented to by the parties with no prior determination of parental fitness) through which the parent had consented to joint custody between the parent and a non-parent, we must conclude that this court’s 2011 statement in In re Melancon, 62 So.3d at 764, that “the law today simply does not permit a parent to share custody with a non-parent without a showing [that sole custody by the parent would result in] ... substantial harm to the child” is not an accurate statement of law. Rather, Tracie F. warrants the conclusion that stipulated judgments of joint custody between a parent and a non-parent are allowable and supported under thej^law of this state. See Tracie F., 188 So.3d at 243-246; see also LSA-C.C. art. 132, Revision Comments—1993, comment (b) (“Under this Article the agreement of the parents, if any, regarding the allocation of custody is controlling when it is consistent with the child’s best interest. The agreement may include an agreement for sole custody in one parent, joint parental custody, or even an award of custody to a third person.” (Emphasis added)).
Moreover, to the extent that Melancon or portions of this court’s opinion therein may survive Tracie F., we note that Me-lancon differs factually and procedurally from the case presently before us. First, the petition seeking to share custody in Melancon was filed by the non-parent, who was, in essence, a legal stranger to the child, prompting this court to raise on its own the exception of no right of action as to any claim asserted pursuant to LSA-C.C. art. 132. In the instant case, however, Nolan, the adoptive parent, filed the motion to establish joint custody in 2005 together with Calandro, the non-parent. And in that pleading, Nolan, the legal parent, specifically averred that she desired to jointly share legal care, custody, and control of the minor child with Calandro. Certainly, Nolan, as the adoptive parent, had a right of action pursuant to LSA-C.C. art. 132 to petition the court for an award of custody of the minor child, to which she, as the legal parent, agreed and which she *585 desired.[9] See LSA-C.C. art. 132, Revision Comments—1993, comment (b); see also Tracie F., 188 So.3d at 243-246.
As a farther distinction, we note that Melancon involved a direct 114appeal from the trial court’s judgment in an initial proceeding to establish joint custody. In the appeal now before us, Nolan attempts to attack the validity of a stipulated judgment rendered over ten years ago on the basis that the relief requested and granted in the May 12, 2005 stipulated judgment “was not supported by the law of this state,” thereby rendering it contra bonos mores. However, the mere fact that a judgment may be contrary to the law does not render it a nullity or subject it to a claim for nullity. See generally Crowell v. Thibodeaux, 2011-2367 (La.App. 1st Cir. 11/2/12), 2012 WL 5381538 at *5 (unpublished), Williams v. Williams, 2006-0358 (La.App. 1st Cir. 2/9/07), 2007 WL 441360 at *6 n.3 (unpublished), and Fidelity and Casualty Company of New York v. Clemmons, 198 So.2d 695, 698 (La. App. 1st Cir.), writ refused, 251 La. 27, 202 So.2d 649 (1967). Thus, even if it could be argued that the May 12, 2005 stipulated judgment was rendered under a misinterpretation or misapplication of the law (although, as discussed above, such an argument is not supported by Melancon in light of Tracie F.), it does not necessarily follow that the stipulated judgment is a nullity.
Accordingly, in light of the Louisiana Supreme Court’s opinion in Tracie F., as well as the different procedural posture of Melancon and the present case, we find that, to the extent that any of this court’s holdings in Melancon survived the Louisiana Supreme Court’s opinion in Tracie F., Melancon is not controlling herein and offers no jurisprudential guidance to resolve the issues presently before us.
For these reasons, we find no merit to Nolan’s contention that the trial court erred in failing to recognize the absolute nullity of the May 12, 2005 stipulated judgment awarding custody of the minor child to her and Calandro jointly.
11 APPROPRIATE BURDEN OF PROOF FOR MODIFICATION OF STIPULATED JUDGMENT OF JOINT CUSTODY
Nolan next argues that the trial court erred by applying the incorrect burden of proof when evaluating her request for a modification of custody. In declining to modify the May 12, 2005 stipulated joint custody judgment, the trial court herein charged Nolan, as the moving party, with the burden of proving that a material change in circumstances affecting the child had occurred and that the proposed modification to sole custody was in the child’s best interest. Nolan contends, however, that the burden of proof herein should have been placed on Calandro, given her status as a non-parent, and that she should have had the burden of establishing, as in an initial contest of custody between a parent and non-parent pursuant to LSA-C.C. art. 133, that the grant of sole custody to Nolan, as the legal parent, would result in substantial harm to the child.
Nolan acknowledges that in Tracie F., the Louisiana Supreme Court held that a parent, as the party seeking to modify a stipulated judgment that granted joint custody to the parent and a non-parent, had the burden, as in all other modification cases involving stipulated judgments, of proving that: (1) there has been a material change in circumstances since the original *586 custody decree was entered, and (2) the proposed modification is in the best interest of the child. Tracie F., 188 So.3d at 244-245. Nolan further acknowledges that this court in the case of In re Varner, 2007-0656 (La.App. 1st Cir. 9/14/07), 2007 WL 2685584 (unpublished), applied the same burden of proof, as later instructed by the Louisiana Supreme Court in Tracie F., where the biological parents sought to modify a previous stipulated judgment that had awarded custody to the paternal grandmother. In Varner, the parents similarly argued that in any custody contest between a parent and non-] lf,parent, it is always the non-parent’s burden, in accordance with LSA-C.C. art. 133, to prove that pax-ental custody would result in substantial harm to the child. In re Varner, 2007-0656 at pp. 4-5, 2007 WL 2685584 at *2. However, this court concluded that in a subsequent proceeding to change custody awarded to a non-parent, the burden of proof should be on the moving parent, as the party seeking the change, and should be the same standard applicable to custody disputes between parents. Thus, because the prior custody award was a stipulated judgment, this court determined that the burden was on the parents seeking the change to establish that a material change in circumstances had occurred and that the proposed change was in the best interest of the child. In re Varner, 2007-0656 at pp. 5-7, 2007 WL 2685584 at *3.
Nonetheless, Nolan maintains that all cases involving custody of a child between a parent and a non-parent require a LSA-C.C. art. 133 determination of parental fitness and tries to distinguish Tracie F. and Varner from the present case on the asserted basis that in both of those cases, “something negative was going on in the biological parents’ lives at the time they entered into the respective stipulated judgments that demonstrated the action was in the best interest of the children involved.” Hence, she contends that those cases involved “a determination of parental fitness by consent.” In essence, she contends that because the parents in those cases were going through “something negative” in their lives, their actions in consenting to the granting of custody to a non-parent should be deemed also as consent to an implicit determination as to their unfitness. Thus, Nolan contends that the burden of proof imposed on the parents seeking modification of the consent judgments in those cases is inapplicable to this matter, where Nolan’s fitness has never been addressed or even questioned.
|17To the contrary, however, the Louisiana Supreme Court in Tracie F. specifically recognized, in addressing a situation where there was a prior stipulated judgment of joint custody by a parent and non-parent, that a stipulated judgment is a judgment rendered by the court where the parties consent to the custodial arrangement and where no evidence of parental fitness is taken. Tracie F., 188 So.3d at 239. Moreover, in articulating the appropriate burden of proof, the Louisiana Supreme Court specifically discussed and rejected the approach of the lower court therein and of the Second Circuit Court of Appeal in Jones v. Coleman, 44,543 (La. App. 2nd Cir. 7/15/09), 18 So.3d 153, that an initial consent judgment awarding custody to a parent and non-parent with the non-parent as domiciliary parent operates as an acknowledgement or determination both of the parent’s unfitness and the fitness of the non-parent. Tracie F., 188 So.3d at 240-245. Thus, any suggestion that the Court in Tracie F. established the appropriate burden of proof for modification of a stipulated judgment of custody between a parent and non-parent on the basis that the prior agreement by the parent therein to share custody with a non-parent implies some sort of determination *587 of parental unfitness by consent of the parent is simply unfounded.
Accordingly, we find no merit to Nolan’s assertion that the trial court, in applying the same burden later articulated by the Supreme Court in Tracie F., imposed the incorrect burden of proof upon her when considering whether to modify the May 12, 2005 stipulated judgment of joint custody to an award of sole custody in her favor.[10]
h «TRIAL COURT’S DENIAL OF REQUEST TO RELOCATE WITH MINOR CHILD
In her final argument, Nolan contends that the trial court abused its discretion in denying her request to relocate to Texas with the minor child. The relocation statutes govern, among other situations, the relocation of a child’s principal residence to a location outside the state, LSA-R.S. 9:355.2(B)(1), and retain the “best interest of the child” standard as the fundamental principle governing relocation decisions. See LSA-R.S. 9:355.10 & LSA-R.S. 9:355.14. Pursuant to LSA-R.S. 9:355.10, the person proposing relocation has the burden of proving the proposed relocation is: (1) made in good faith, and (2) in the best interest of the child. By placing this two-part burden on the person proposing relocation, and no burden on the opposing party,[11] the legislature chose to assign a very heavy burden to the relocating parent to prove that the relocation is in the best interest of the child. Gathen v. Gathen, 2010-2312 (La. 5/10/11), 66 So.3d 1, 8.
In reaching a decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether the relocation is in the best interest of the child, including the factors listed in LSA-R.S. 9:355.14, as follows:
(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development.
(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s views about the proposed relocation, taking into consideration the age and maturity of the child.
hg(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.
(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial and emotional benefit and educational opportunity.
(7) The reasons for each person for seeking or opposing relocation.
(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.
*588 (9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.
(10) The feasibility of a relocation by the objecting person.
(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
Moreover, a trial court’s determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Gathen, 66 So.3d at 9.
In t|ie instant case, although the trial court found that Nolan’s request to relocate with the minor child to Austin, Texas was made in good faith, it further found, after carefully analyzing the factors set forth in LSA-R.S, 9:355.14, that the proposed relocation was not in the best interest of the child. The court observed that while Calandro is not listed on the child’s birth certificate, she nonetheless had raised the child as her own, that her love for him was apparent, and that the proposed relocation would negatively impact the close relationship he shares with her in a way that is not beneficial to the child. Additionally, the court noted that the child, who was eleven years old at the time of the hearing, had resided with Nolan and Calandro for the entirety of his life and that he was thriving in Livingston Parish, where he was doing well in school and was involved in | ^extracurricular activities in his community. Further, both Nolan’s and Calandro’s extended families are in Louisiana.
Contrariwise, the court observed that the child had met Nolan’s husband only once before Nolan married him and that the child had been to Austin, Texas only one time in his life. And while Nolan’s husband’s income would allow Nolan to stay home and care for the child in Texas, the court found that the distance between Austin, Texas and Livingston Parish, which was approximately a seven-hour trip, would substantially prohibit continued regular custody with Calandro and, thus, would adversely impact the preservation of that loving relationship.
Based on a thorough review of the record, we conclude that the trial court’s findings are amply supported by the record. As such, we cannot say that the trial court abused its discretion in denying Nolan’s relocation request. The Mai court expressly analyzed the factors and ultimately determined that relocation to Texas was not in the minor child’s best interest. Nothing in the record or in the trial court’s reasons supports a conclusion that the trial court abused its discretion in its determination. See Gathen, 66 So.3d at 10-13. Accordingly, we likewise find no merit to this argument.
CONCLUSION
For the above and foregoing reasons, Nolan’s Motion for Leave to Attach Additional Documents is hereby denied as moot, given the status of the record herein. The trial court’s November 17, 2015 judgment, denying Nolan’s request for sole custody of the minor child J.E.T. and her request for relocation and setting forth a schedule of physical custody for the parties, is | ¾1 hereby affirmed. Costs of this appeal are assessed against appellant, Jennifer Thomas Nolan.
*589 MOTION TO ATTACH ADDITIONAL DOCUMENTS DENIED AS MOOT; JUDGMENT AFFIRMED.

. Once Nolan moved out of the home she had shared with Calandro, she and Calandro began sharing physical custody of the child on a week-to-week basis.

. In response to Calandro’s Rule to Show Cause, Nolan filed peremptory exceptions raising the objections of no cause of action and no right of action, contending that LSA-C.C. arts. 131, 132, and 133, when read together, "necessitate that there must be some action or contestation between the parents of a child for a custody action to be appropriate” and that because Nolan is the only legal parent of the minor child, Calandro had no standing to seek custody and had failed to a state cause of action for which relief could be granted. These exceptions were set for hearing on September 16, 2015. However, the minute entry for that date indicates the following:
This matter appearing on the Civil Rules Docket on this date for the purpose of an exception of no cause of action, no right of action, and other matters. Personally present in open Court was counsel ... on behalf of the plaintiff and counsel ... on behalf of the defendant. After a meeting with the Court, this matter was removed from the docket.
The record contains no formal ruling on these exceptions, and the judgment on the merits of the parties’ rules is silent as to the exceptions.
In her brief to this court, Nolan contends that at the scheduled hearing on the exceptions, the trial court took up the exceptions in chambers in a status conference, "but did not take the matter up on the record and did not make a formal ruling.” (Emphasis added). She further contends that "[t]he parties were instructed to immediately file any outstanding pleadings and to set the matter for trial.” According to Nolan, soon thereafter, she filed her Rule for Sole Custody and to Relocate the Minor Child and requested that the matter be set for trial on the same date as the previously scheduled trial on Calandro's rule. On the other hand, Calandro contends in her appellate brief that "[ajfter an in person status conference with the court, the court set all matters for trial on November 4, 2015 at the request of the appellant.” (Emphasis added).
The transcript of the November 4, 2015 hearing indicates that when the trial court called this matter, counsel for Nolan proceeded with Nolan’s Rule for Sole Custody and to Relocate the Minor Child. Notably, there was no mention made of the exceptions and no argument presented on them, Thus, on the record before us, it is unclear whether Nolan abandoned her exceptions at the September 16, 2015 in-chambers conference, whether they were denied by the trial court at that time, but with no formal rendition of that ruling, or whether the exceptions were referred to the hearing on the competing rules and then either waived by Nolan in light of her failure to present any argument thereon or implicitly denied by the trial court by its silence as to the exceptions in its judgment on the competing rules. See generally Hebert v. Shelton, 08-1275 (La. App. 3rd Cir. 6/3/09); 11 So.3d 1197, 1201 (where a party filed various exceptions including exceptions of no right of action and no cause of action, but the trial court ruled only on the exception raising no right of action, the trial court effectively denied all other exceptions).
Nonetheless, we note that Nolan does not challenge on appeal the absence of a ruling by the trial court on her exceptions. Accordingly, we decline to address these exceptions. See generally Judson v. Davis, 2004-1699 (La.App. 1st Cir. 6/29/05), 916 So.2d 1106, 1113, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167 (court declined to consider issues not directly involved in the judgment actually appealed and not set forth in assignments of error).

. The Joint Custody Plan essentially provided that if Nolan continued to live in the state of Louisiana, she was designated as domiciliary parent and Calandro would have physical custody of the child for three weekends of each month, as well as certain holidays, and alternating weeks of physical custody during the summer. However, in the event that Nolan chose to relocate to the state of Texas without the minor child, the plan designated Calandro as domiciliary parent and provided that Nolan would have physical custody of the child for the entirety of two of the three major holidays listed in the Livingston Parish school calendar and for the entirety of the summer.

. Louisiana Code of Civil Procedure article 2002(A) contains a list of the specific vices of form that render a judgment absolutely null, none of which apply herein. Hebert v. Hebert, 96-2155 (La.App. 1st Cir. 9/19/97), 700 So.2d 958, 959. These include a judgment rendered against an unrepresented incompetent person, against a defendant who has not been served with process and has not waived the objection or against whom a valid default judgment has not been taken, or by a court lacking subject matter jurisdiction. See LSA-C.C.P. art. 2002(A).

. As discussed more fully herein, in support of her claim that the May 12, 2005 stipulated . judgment is an absolute nullity, Nolan relies on this court’s statement in Melancon that the law does not permit a parent to share custody with a non-parent without a showing of substantial harm to the child. In re Melancon, 62 So.3d at 764. We note that, similar to her argument herein, Nolan argued at the hearing on the merits that the present matter was essentially an initial custody hearing because the trier of fact had never previously heard the case when the consent judgment was signed and that accordingly, the court would have to initially find that an award of sole custody to Nolan would cause substantial harm to the child before any award of custody to a non-parent could be made. However, it is not apparent from our review of the record on appeal that she specifically averred below that the May 12, 2005 judgment was absolutely null on the basis that there was no contemporaneous finding of substantial harm at the time the May 12, 2005 judgment was rendered.
In Aufrichtig v. Aufrichtig, 34,909 (La. App. 2nd Cir. 8/22/01), 796 So.2d 57, 60, wherein a husband argued for the first time on appeal that alimony and insurance coverage provi *582 sions of a prior consent judgment violated public policy and were thus absolutely null, the appellate court noted that generally, an appellant is precluded from raising for the first time on appeal an issue that was not raised in the trial court. However, the court further noted that because LSA-C.C. art. 2030 provides that an absolute nullity may be declared by the court on its own initiative, it was appropriate to address the issue on appeal. Aufrichtig, 796 So.2d at 60. We follow the same approach herein.

. However, on rehearing, this court remanded the matter to the trial court to allow the petitioner to amend her petition pursuant to LSA-C.C.P. art. 934 to establish a right of action and to state a cause of action. In re Melancon, 2010-1463 (La.App. 1st Cir. 4/7/11), 102 So.3d 65.

. The stipulated judgment resulted from a proceeding filed by the father and the maternal grandmother, with the mother named as defendant, to change a previous stipulated judgment of joint custody to the mother and father, amid concerns about the mother’s personal situation. The stipulated judgment ultimately rendered in those proceedings further provided that the child was permanently removed from the mother’s custody. Tracie F., 188 So.3d at 236-237.

. In referring to a situation wherein a parent consents to a non-parent serving the role of domiciliary parent, the Louisiana Supreme Court was clearly speaking of a situation wherein the parent had consented to an award of joint custody with the non-parent in that "[t]he concept of domiciliary parent applies only to joint custody arrangements.” Tracie F., 188 So.3d at 242 n.8.

. Moreover, through the 2005 stipulated judgment, which is a final judgment not subject to appeal, Calandro was granted legal rights vis-á-vis the child, ⅛, custodial rights. Thus, she is not a legal stranger to the child in the proceedings currently before us.

. Notably, Nolan does not alternatively argue on appeal that, if in fact the trial court actually imposed the correct burden of proof, it abused its discretion in denying her request to modify the stipulated judgment of joint custody to an award of sole custody.

. Pursuant to LSA-R.S. 9:355.8, a non-parent may object to the relocation if she has been awarded custody.