STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2021 CA 0082

CHARLES BRUMFIELD, JR.

VERSUS

THE VILLAGE OF TANGIPAHOA, RICKY COLEMAN,
DEBORAH CYPRIAN, AND SHELIA MARTIN

Decision Rendered:  **DEC 2 0 2021**

\* \* \* \* \* \* \*

APPEALED FROM THE
21st JUDICIAL DISTRICT COURT, DIVISION E
TANGIPAHOA PARISH, LOUISIANA
DOCKET NUMBER 2019-0002159

HONORABLE BRENDA BEDSOLE RICKS, JUDGE

\* \* \* \* \* \* \*

William D. Aaron, Jr.
DeWayne L. Williams
Courtney H. Payton
New Orleans, Louisiana

Attorneys for Defendants/Appellants
Ricky Coleman, Debrah Cyprian,
and Shelia Martin

Latoia Williams-Simon
Vanessa R. Williams
Amite, Louisiana

Attorneys for Plaintiff/Appellee
Charles Brumfield Jr.

**BEFORE: McDONALD, LANIER, AND WOLFE, JJ.**

**McDONALD, J.**

In this suit for a writ of mandamus, the trial court signed an amended judgment granting the writ, ordering the Village of Tangipahoa and three of its aldermen to produce certain public records, assessing a penalty to each alderman for violations of the Louisiana Public Records Law, and awarding the plaintiff costs and attorney fees. The aldermen appealed. After review, we vacate the amended judgment as to one alderman and affirm the amended judgment as to two aldermen.

## FACTUAL AND PROCEDURAL HISTORY

On or about July 1, 2019, Charles Brumfield Jr. submitted a public records request (PRR) to the Village of Tangipahoa, and to three of its aldermen, Ricky Coleman, Debrah Cyprian,[1] and Shelia Martin (defendants). Generally, Mr. Brumfield sought access to public records related to "public meetings held on the 'Barroom Closing Ordinance' and the 'Business Closing Ordinance,' as well as donations, payments or gifts provided by members of the community under contract with the Village to public officers of the Village." On July 16, 2019, Mr. Brumfield filed a petition for writ of mandamus against the defendants, alleging they had failed to timely respond to his PRR. He sought a judgment ordering the defendants to produce the requested records, awarding him damages, and assessing the defendants with penalties, costs, and attorney fees.

The trial court held a hearing on the matter on March 9, 2020, at which Mr. Brumfield was represented by counsel and the defendants appeared *pro se*, with the Village of Tangipahoa appearing through Mayor Trashica Robinson. At the end of the hearing, the trial court orally ruled that Mr. Coleman, Ms. Cyprian, and Ms. Martin (the Aldermen) arbitrarily and capriciously failed to comply with Mr. Brumfield's PRR and that each was liable for a penalty of $14,000. The trial court also awarded Mr. Brumfield costs and $3,500 in attorney fees. The trial court stated that the Aldermen could "purge" themselves of the fines by "providing full and complete public records" to Mr. Brumfield's attorney by noon on March 13, 2020. Although the trial court stated that it

_____

[1] The petition names "Deborah Cyprian" as a defendant. The proper spelling of Ms. Cyprian's first name is "Debrah."

2

would sign a judgment conforming to its ruling, the record contains no contemporaneous written judgment memorializing the March 9, 2020 oral ruling and/or making the writ peremptory. *See* La. C.C.P. art. 3866.

On March 18, 2020, Mr. Brumfield filed a "Motion to Clarify Judgment," alleging the Aldermen had still not complied with his PRR and asking the trial court to "clarify judgment, ordering that the civil penalties assessed be executed, or in the interim, for the [Aldermen] to show cause as to why the penalties should not be assessed."

On June 1, 2020, the trial court held a hearing on the "Motion to Clarify Judgment," and on that same date, the trial court signed a judgment granting "the Writ of Mandamus," assessing a $14,000 penalty against each of the Aldermen, and ordering that the defendants were solidarily liable for costs and $3,500 in attorney fees. The Aldermen filed a motion for new trial, and after a hearing, the trial court signed a judgment, on September 21, 2020, denying the motion. The Aldermen appealed from the judgment denying their motion for new trial. The Village of Tangipahoa did not appeal.

## APPELLATE JURISDICTION

At the outset, we note that a judgment denying a motion for new trial is interlocutory and generally not appealable. *See* La. C.C.P. art. 2083C; *Doctors for Women Medical Ctr., LLC v. Breen,* 19-0582 (La. App. 1 Cir. 5/11/20), 303 So.3d 667, 671. However, the Louisiana Supreme Court has directed appellate courts to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case. *Leisure Rec. & Entm't, Inc. v. First Guar. Bank,* 19-1698 (La. App. 1 Cir. 2/11/21), 317 So.3d 809, 816-17. Here, the circumstances indicate the Aldermen intended to appeal from the June 1, 2020 judgment granting the writ of mandamus and assessing them with penalties, as well as from the September 21, 2020 judgment denying their motion for new trial. Thus, we review the appeal accordingly.

The June 1, 2020 judgment grants a writ of mandamus. Generally, a judgment granting a mandamus is a final, appealable judgment. *Children's Hospital v. Schnauder,*

3

18-1328 (La. App. 1 Cir. 1/10/19), 2019 WL 162248. However, as with any other valid, final judgment, a judgment granting a mandamus must be definite and certain; it must specify the precise thing to be done or prohibited and must define the duty to be done with sufficient particularity as to leave nothing to the exercise of discretion or judgment. *See* 55 *C.J.S. Mandamus* §421 (June 2021), *citing Freeman v. Gregoire,* 171 Wash.2d 316, 323, 256 P.3d 264 (2011). In accord with this legal precept, on August 10, 2021, we issued an interim order to the parties, noting that the June 1, 2020 judgment appeared to lack appropriate decretal language disposing of and/or dismissing Mr. Brumfield's claims. *See* La. C.C.P. arts. 1911 and 1918. Specifically, we noted that the June 1, 2020 judgment granted a writ of mandamus, but did not specify to whom the mandamus was directed, nor did it specify what precise action was to be performed by the person to whom the mandamus was directed. We remanded this matter to the trial court ordering that it sign an amended judgment correcting the noted deficiencies. *Brumfield v. Village of Tangipahoa, et al.,* 2021 CA 0082 (La. App. 1 Cir. 8/10/21) (unpublished order).[2]

The trial court signed an "Amended Judgment" on September 20, 2021, which was added to the appellate record, and which pertinently states:

> **IT IS ORDERED, ADJUDGED AND DECREED** that the Writ of Mandamus by Petitioner, Charles Brumfield, and directed to Defendants, Village of Tangipahoa, Alderman Ricky Coleman, Alderwoman [Debrah] Cyprian and Alderwoman Shelia Martin is granted.
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Village of Tangipahoa submit to Petitioner, Charles Brumfield, all minutes of meetings related to the "Business Closing Ordinance" and the "Barroom Closing Ordinance," as well as the contractual agreement between the Village of Tangipahoa and Leo Perry (Hoppin' Harley's).
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Alderman Ricky Coleman submit to Petitioner Charles Brumfield all email, text and other telephonic records wherein a quorum was reached and the topic related to: (1) the "Business Closing Ordinance" and the "Barroom Closing Ordinance" and (2) the Special Meeting of the Village of Tangipahoa Council held on June 28, 2019.
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Alderwoman Shelia Martin submit to Petitioner Charles Brumfield all email, text and other telephonic records wherein a quorum

---

[2] This court's interim order also ordered the clerk of court to supplement the appellate record with the March 9, 2020 hearing transcript.

4

was reached and the topic related to: (1) the "Business Closing Ordinance" and the "Barroom Closing Ordinance" and (2) the Special Meeting of the Village of Tangipahoa Council held on June 28, 2019.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendant Alderwoman [Debrah] Cyprian submit to Petitioner Charles Brumfield all email, text and other telephonic records wherein a quorum was reached and the topic related to: (1) the "Business Closing Ordinance" and the "Barroom Closing Ordinance" and (2) the Special Meeting of the Village of Tangipahoa Council held on June 28, 2019. Additionally, Defendant Alderwoman Cyprian is ordered to submit any and all email, text or telephonic records wherein the Defendant Alderwoman solicited a gift donation from Leo Perry (Hoppin' Harley's) and a copy of the check related to the gift-donation.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that civil penalties are assessed personally against Defendants Ricky Coleman, [Debrah] Cyprian and Shelia Martin in the amount of Fourteen thousand dollars ($14,000.00) each for their arbitrary and capricious failure to tender the public records for over one-hundred forty (140) business days after Petitioner's submission ($100 per day assessed for each of the 140 days) pursuant to Louisiana Revised Statutes ... 44:35(B) and (E)(1)-(2).

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Defendants Village of Tangipahoa, Ricky Coleman, Shelia Martin and [Debrah] Cyprian are liable, in solido, for all costs of litigation through the judgment, including all court costs and attorney's fees pursuant to Louisiana Revised Statutes ... 44:25(D)(1) and (E)(2) in the amount of thirty-five hundred dollars ($3500.00)[.]

On appeal, the Aldermen contend the trial court erred by denying the new trial as to Ms. Martin, because she was not served with notice of the June 1, 2020 hearing on Mr. Brumfield's "Motion to Clarify Judgment," which resulted in the June 1, 2020 judgment. The Aldermen also contend the trial court erred in assessing a penalty against them for failing to produce records that do not exist or that they do not possess.

## DENIAL OF MOTION FOR NEW TRIAL

We first address whether the trial court erred by denying Ms. Martin's motion for new trial, based on Mr. Brumfield's failure to serve Ms. Martin with notice of the June 1, 2020 hearing. A new trial shall be granted when the verdict or judgment appears clearly contrary to the law and evidence. La. C.C.P. art. 1972(1). We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Myles v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.,* 17-1014 (La. App. 1 Cir. 4/6/18), 248 So.3d 545, 561. This standard is highly deferential, but a court necessarily abuses its

5

discretion if its ruling is based on an erroneous view of the law. *LCR-M Ltd. P'ship. v. Jim Hotard Prop., L.L.C.,* 13-0483 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675.

Other than in circumstances not at issue here,[3] every pleading subsequent to the original petition shall be served on the adverse party. La. C.C.P. art. 1312. If a pleading or order sets a court date, service shall be made by registered or certified mail, by sheriff as provided in La. C.C.P. art. 1314, or by commercial carrier. La. C.C.P. art. 1313C. In this case, the trial court signed an order on April 6, 2020, setting the June 1, 2020 hearing on Mr. Brumfield's "Motion to Clarify Judgment." Thus, because the April 6th order set a court date, service of the order on all adverse parties was required under La. C.C.P. art. 1313C.

It is undisputed that Shelia Martin was not served with notice of the April 6th order setting the June 1st court date. Mr. Brumfield's counsel conceded such at the hearing on the motion for new trial and in his appellate brief. Further, contrary to Mr. Brumfield's position, Ms. Martin did not waive her right to contest the lack of service. The record shows that Ms. Martin was neither present nor represented by counsel at the June 1st hearing; thus, she did not make an appearance. Nor did she waive her right to contest the lack of service by failing to file a declinatory exception of insufficiency of service of process. A judgment rendered against a defendant who has not been served with process as required by law, and who has not waived objection to jurisdiction, is an absolute nullity. *See* La. C.C.P. arts. 1201A and 2002A(2); *Butler v. Sandberg,* 18-0917 (La. App. 1 Cir. 10/23/19), 289 So.3d 638, 641. An absolutely null judgment may be challenged at any time, by rule, or by any other method. *In re J.E.T.,* 16-0384 (La. App. 1 Cir. 10/31/16), 211 So.3d 575, 581; *Hebert v. Hebert,* 96-2155 (La. App. 1 Cir. 9/19/97), 700 So.2d 958, 959. Thus, the trial court abused its discretion by failing to grant Ms. Martin a new trial on this basis. Accordingly, as to Ms. Martin, we vacate the Amended Judgment as an absolute nullity. *Brown v. Terrebonne Par. Sher. Off.,* 17-1305 (La. App. 1 Cir. 4/13/18), 249 So.3d 864, 869; *Kingdom Bldrs. Comm.*

---

[3] Louisiana Code of Civil Procedure article 1312 provides that service on the adverse party need not be made of a motion for petition for appeal, of a petition for the examination of a judgment debtor, of a petition for the issuance of garnishment interrogatories in the execution of a final judgment, or of any pleading not required by law to be in writing.

6

*Dev. Corp. v. La. Bd. of Elem. & Sec. Educ.,* 17-0695 (La. App. 1 Cir. 11/1/17), 233 So.3d 94, 96-97.

## PUBLIC RECORDS LAW

We next address the contention of the remaining Aldermen, Mr. Coleman and Ms. Cyprian, that the trial court erred in assessing a penalty against them for failing to produce records that do not exist or that they do not possess. Mr. Brumfield argues that the Aldermen cannot now contest what records the trial court ordered them to produce, because the Aldermen did not appeal the June 1, 2020 judgment. We reject this argument. As earlier noted, the June 1, 2020 judgment granted a writ of mandamus, but it did not specify to whom the mandamus was directed, nor did it specify what precise action was to be performed by the person to whom the mandamus was directed. It is the Amended Judgment that, for the first time, specifically directs certain persons, *i.e.,* the Village of Tangipahoa and the Aldermen, to produce certain records.[4] And, on appeal, the parties have addressed the records that the Amended Judgment mandates the Aldermen to produce. As earlier noted, the circumstances indicate the Aldermen intended to appeal the merits of the trial court's mandamus order. Thus, in the interest of justice, we review the Amended Judgment insofar as it orders the Aldermen to produce specific records and assesses penalties against Mr. Coleman and Ms. Cyprian. *See* La. C.C.P. art. 2164; *Wheeler v. La. Peace Officer Standards & Training Council,* 17-1335 (La. App. 1 Cir. 6/3/20), 305 So.3d 387, 393, n.10.

The right of access to public records is guaranteed by the Louisiana Constitution and the Public Records Law. La. Const. art. XII, §3; La. R.S. 44:1, *et seq.* Any person may obtain a copy of any public record, in accordance with the Public Records Law, except as otherwise provided by that or other specific law. La. R.S. 44:31B; *Shane v. Par. of Jefferson,* 14-2225 (La. 12/8/15), 209 So.3d 726, 735. These constitutional and statutory rights of access to public records should be construed liberally, and any doubt must be resolved in favor of the public's right to see. *Shane,* 209 So.3d at 735.

---

[4] At the March 9, 2020 hearing, Mayor Robinson testified that, to her knowledge, the Village of Tangipahoa produced responsive records to Mr. Brumfield's counsel.

7

Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees. La. R.S. 44:31A(1). The "custodian" is the public official or head of any public body having custody or control of a public record, or his specifically authorized representative. La. R.S. 44:1A(3). The term "public body" includes any instrumentality of state, parish, or municipal government. La. R.S. 44:1A(1).

The custodian of the record shall present it to any person of the age of majority who so requests. La. R.S. 44:32A. While the record generally must be made available "immediately," the Public Records Law recognizes that some reasonable delay may be necessary to compile, review, and when necessary, redact, or withhold certain records that are not subject to production. La. R.S. 44:32B; 44:33; 44:35A; *Krielow v. LSU Bd. of Suprs.,* 19-0176 (La. App. 1 Cir. 11/15/15), 290 So.3d 1194, 1202; *Par. of Ascension v. Wesley,* 19-0364 (La. App. 1 Cir. 12/12/19), 291 So.3d 730, 733; *Roper v. City of BR/Parish of EBR,* 16-1025 (La. App. 1 Cir. 3/15/18), 244 So.3d 450, 459. The law is clear, however, regarding the custodian's statutory duties to timely respond to the requestor by: (1) immediately presenting a public record that is immediately available, or if not immediately available, certifying such to the requestor and fixing a time within three days for the exercise of the right, La. R.S. 44:33B(1); (2) notifying the requestor within three days of each request of any questions by the custodian as to whether a record is a public record, La. R.S. 44:32D; or (3) within five days of each request, providing a written estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of the request. La. R.S. 44:35A; *Par. of Ascension,* 291 So.3d at 735.

### Applicability of the Public Records Law
### to the Aldermen and to the Requested Records

The Village of Tangipahoa is a Lawrason Act municipality and the mayor is its chief executive officer. La. R.S. 33:321, *et seq.*; 33:361; 33:362B. The Village's legislative powers are vested in and exercised by a board of aldermen, and that board's authority includes the power to enact and enforce ordinances and to call meetings, at

8

which the mayor presides. La. R.S. 33:362; 33:405; 33:406. As a municipality, the Village is a "public body" and its "public records" are subject to production under the Public Records Law. *See* La. R.S. 33:361; 44:1A(1)[5] & (2)(a).[6] As a public official, an alderman may be the "custodian" of a public record if he has "custody or control" of the public record. *See* La. R.S. 44:1A(3); *see Roper,* 244 So.3d at 464-66 (noting that City of Baton Rouge/Parish of East Baton Rouge Metropolitan Council members searched their private devices and email accounts after receiving a PRR and finding these officials individually liable for penalties as custodians who failed to timely respond to a PRR). And, if an alderman has a record in his custody or control, "regardless of physical form," and that record includes "information ... having been used ... in the ... performance of any business ... conducted ... under the authority of the ... laws of this state ...," then that record may qualify as a "public record," unless excepted by the Louisiana Constitution or the Public Records Law. *See* La. R.S. 44:1A(2)(a).

In *Shane,* the Louisiana Supreme Court interpreted the definition of a "public record" to include an email, if that email is used in the performance of any work, duty, or function of a public body, under the authority of state or local law. *Shane,* 209 So.3d at 735-36.[7] We have found no Louisiana case directly holding a text message would

---

[5] The Public Records Law, La. R.S. 44:1A(1) defines a "public body" as:

> [A]ny branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function, or an affiliate of a housing authority.

[6] The Public Records Law, La. R.S. 44:1A(2)(a), defines a "public record" as:

> All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

[7] Note, however, that the Louisiana Attorney General has opined that "e-mails of a purely personal nature received or transmitted by a public employee which have no relation to any function of a public office are not 'public records' as described by the Public Records Act." *Shane,* 209 So.3d at 746 (*Johnson, C.J., concurring,* and citing to La. Att'y Gen. Op. No. 10-0272 (April 13, 2011)).

also be included in the definition of a "public record." And, we acknowledge that text messages present unique challenges in the context of the public records law, specifically relating to the logistics of retention, production, and possession of text messages as public records. *See, generally,* Vera, Helen, *"'Regardless of Physical Form': Legal and Practical Considerations Regarding the Application of State Open-Records Law to Public Business Conducted by Text Message,"* 32 SPR Comm. Law. 24, 24-25 (2017). However, as instructed by the *Shane* court, we should liberally construe the constitutional and statutory rights of access to public records and resolve any doubt in favor of the public's right to see. *Shane,* 209 So.3d at 735. Thus, we hold that, under *Shane's* reasoning, a "public record" would also include a text message, if that text message is used in the performance of any work, duty, or function of a public body, under the authority of state or local law. *Accord City of San Jose v. Superior Court,* 2 Cal.5th 608, 625, 389 P.3d 848, 858 (2017) (under California law, concluding a city employee's communications related to the conduct of public business do not cease to be public records just because they were sent or received using a personal account); *Toensing v. Attorney General,* 206 Vt. 1, 13, 178 A.3d 1000, 1007 (2017) (concluding Vermont's public records law's definition of public record does not exclude otherwise qualifying records on the basis that they are located in state employee's private account); *Nissen v. Pierce County,* 183 Wash.2d 863, 881, 357 P.3d 45, 55-56 (2015) (concluding Washington's public records law reached records "prepared, owned, used, or retain[ed]" by state employees in the course of their jobs, including the work product of public employees found on their personal cell phones, such as text messages). Otherwise, a public official could evade the law simply by communicating about sensitive public matters through a personal device and routinely escaping public scrutiny. *See City of San Jose,* 2 Cal.5th at 625.

It follows then that, if a public official uses his personal cell phone to send text messages related to the performance of his public duties, then he is the "custodian" with "custody" of those "public records" under the Public Records Law, and, even if he has a reason for not being able to *produce* those records, or claims a constitutional or

10

statutory exception to production,[8] he has a constitutional and statutory duty under the Public Records Law to timely *respond* to a PRR requesting those "public records."

The Amended Judgment herein orders the Aldermen to produce "all email, text[,] and other telephonic records wherein a quorum was reached and the topic related to: (1) the "Business Closing Ordinance" and the "Barroom Closing Ordinance," and (2) the Special Meeting of the Village of Tangipahoa Council held on June 28, 2019." Because the Aldermen have the statutory authority to enact and enforce ordinances and to hold meetings under La. R.S. 33:362A and 33:405-406, any records related to Village of Tangipahoa ordinances and meetings would be "public records" subject to production. And, each Alderman is the "custodian" of any such email or text message on his/her personal cell phone as he/she has custody/control of that phone. *See Roper*, 244 So.3d at 464-66. Thus, we find no error in the trial court's determination that an email, text, or other telephonic record regarding the above ordinances or meeting constituted a "public record." As such, when they received Mr. Brumfield's PRR for the above records, the Aldermen had the statutory duty to timely respond to Mr. Brumfield's PRR by: (1) immediately presenting a public record that was immediately available, or if not immediately available, certifying such to Mr. Brumfield and fixing a day and time within three days for the exercise of the right, La. R.S. 44:33B(1); (2) notifying Mr. Brumfield within three days of the request of any questions by the Aldermen as to whether a record was a public record, La. R.S. 44:32D; or (3) within five days of the request, providing a written estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of the request. La. R.S. 44:35A; *Par. of Ascension*, 291 So.3d at 735.

---

[8] The legislature anticipated that public entities would often use the records of private individuals in the conduct of the entities' business, work, duties, or functions, thus falling into the broad definition of "public record." Notwithstanding, such records may be subject to one of the many exceptions set forth either in the Louisiana Constitution or the Public Records Law. *Shane*, 209 So.3d at 740 & 740, n.10 (*e.g., see* La. R.S. 44:1A(2)(b), B; La. R.S. 44:2; La. R.S. 44:3; La. R.S. 44:3.1; La. R.S. 44:3.2; La. R.S. 44:3.3; La. R.S. 44:3.4, La. R.S. 44:3.5; La. R.S. 44:3.6; La. R.S. 44:4; La. R.S. 44:4.1B, C; La. R.S. 44:5; La. R.S. 44:7; La. R.S. 44:10; La. R.S. 44:11; La. R.S. 44:12; La. R.S. 44:13; La. R.S. 44:15; La. R.S. 44:16; La. R.S. 44:17; La. R.S. 44:18; La. R.S. 44:19; La. R.S. 44:20; La. R.S. 44:21; La. R.S. 44:21.1; La. R.S. 44:22; La. R.S. 44:22.1; La. R.S. 44:23; La. R.S. 44:23.1.)

The Amended Judgment also orders Ms. Cyprian to produce "all email, text[,] or telephonic records wherein [she] solicited a gift donation from Leo Perry (Hoppin Harley's) and a copy of the check related to the gift-donation." At the March 9, 2020 hearing, Ms. Cyprian admitted that, in 2019, she asked "Mr. Harley" to make a donation to her church, Quinn Chapel Church, where she served as church secretary. Ms. Cyprian also presented a copy of a $500 check payable to Quinn Chapel AME Church to the trial court and Mr. Brumfield's counsel. Given Ms. Cyprian's admissions, Mr. Brumfield's writ of mandamus for records of this nature, and the Amended Judgment ordering such, are arguably moot. *See Roper,* 244 So.3d at 461-62. Nevertheless, whether moot or not, Mr. Brumfield's claims for monetary relief under La. R.S. 44:35, specifically the penalty discussed below, are distinct causes of action that would not be rendered moot. *Roper,* 244 So.3d at 462, n.7.

## Penalties under the Public Records Law

We now address whether the trial court properly assessed a penalty against Aldermen Coleman and Cyprian.

The trial court shall award reasonable attorney fees and other costs of litigation to a requestor who prevails in his public records suit. La. R.S. 44:35D(1). Further, the trial court may award the requestor actual damages if the court finds: (1) the custodian arbitrarily or capriciously withheld the requested record, or (2) arbitrarily or unreasonably failed to provide the notice required by La. R.S. 44:32D. *Roper,* 244 So.3d at 460. And, if the trial court finds the latter, *i.e.,* that the custodian arbitrarily or unreasonably failed to provide the notice required by La. R.S. 44:32D, it is only then that the trial court may also award the requestor civil penalties. La. R.S. 44:35E(1); *Roper,* 244 So.3d at 460; *see also Stevens v. St. Tammany Par. Gov't.,* 17-0959 (La. App. 1 Cir. 7/18/18), 264 So.3d 456, 463 & 465. We use an abuse-of-discretion standard to review a trial court's award of civil penalties pursuant to La. R.S. 44:35E(1). *Roper,* 244 So.3d at 466.

12

At the March 9, 2020 hearing on the merits of Mr. Brumfield's PRR, Mr. Coleman and Ms. Cyprian testified.[9] Mr. Coleman admitted that he was aware of the Public Records Law, that he received Mr. Brumfield's PRR, and knew he had to respond. Although Mr. Coleman testified that he did respond to Mr. Brumfield, he admitted that he did not have documentation to prove that he responded. He explained that he did not produce any phone records, because he did not have any, as they had been deleted. He further explained that he does not communicate via email. He admitted that he did not inform Mr. Brumfield that any potentially responsive text messages had been deleted from his phone. Ms. Cyprian similarly testified that she received Mr. Brumfield's PRR regarding "barrooms and business ordinances" and the alleged donation and admitted that Mr. Brumfield's PRR cited to the Public Records Law and set forth applicable deadlines for a response and the possibility of penalties. She further admitted that she did not respond to the PRR.[10]

Regardless of whether either Aldermen actually had custody of any of the records Mr. Brumfield requested, the Public Records Law required that they timely respond to his PRR. *See* La. R.S. 44:35A; *Par. of Ascension,* 291 So.3d at 735. Mr. Coleman failed to prove his assertion that he timely responded to Mr. Brumfield's PRR by introducing evidence of such. Ms. Cyprian plainly admitted that she did not respond to Mr. Brumfield's PRR. The custodian has the burden of proving that a public record is not subject to production. La. R.S. 44:31B(3). Because Mr. Coleman and Ms. Cyprian did not carry their burdens of proof, we find the trial court did not abuse its discretion in assessing a civil penalty against each of them under La. R.S. 44:35E(1), as the record shows they arbitrarily and unreasonably failed to timely provide the notice required by

---

[9] At the beginning of the hearing, Ms. Martin requested that the hearing be continued, because the Aldermen then had no attorney present to represent them. Mr. Brumfield's counsel opposed the request. The trial court denied the continuance.

[10] Mr. Brumfield personally submitted the July 1, 2019 PRR at issue. The record indicates that Latoia Williams-Simon, Mr. Brumfield's counsel, submitted additional, separate PRRs to the Aldermen. At the March 9, 2020 hearing, Ms. Cyprian testified that she responded to one of the PRRs she received, stating it "could have been lately" that she responded, but she did not state who sent the PRR to which she responded.

13

La. R.S. 44:32D. *Roper,* 244 So.3d at 466; *Stevens,* 264 So.3d at 463, 465.[11]

## Request for Sanctions Against the Aldermen

In his appellate brief, Mr. Brumfield contends this court should impose sanctions against the Aldermen for lodging "scandalous and frivolous accusations" that Mr. Brumfield and his attorney brought this suit against the Aldermen as a "conspiracy of political retribution." According to Mr. Brumfield, the Aldermen's brief is "rife with insulting and offensive allegations, calling [Mr. Brumfield] and his counsel 'unconscionable,' and accusing them of 'improperly using the courts,' 'seeking punitive measures,' 'malicious exuberance,' and 'committing unethical and illegal conduct.'"

Rule 2-12.2C of the Uniform Rules of the Courts of Appeal prohibits language in briefs that includes the use of vile, obscene, obnoxious, or offensive expressions, and insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. *W&T Offshore, L.L.C. v. Texas Brine Corp.,* 17-0574 (La. App. 1 Cir. 5/10/18), 250 So.3d 970, 976-77, *rev'd in part on other grds,* 18-0950 (La. 6/26/19), 319 So.3d 822 *(per curiam).* Any violation of this prohibition shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned. URCA Rule 2-12.2C. Nevertheless, Rule 2-12.2C does not provide for the imposition of sanctions. And, the ability to impose sanctions under La. C.C.P. art. 863 is limited to the trial court. *Hornot v. Cardenas,* 10-1569 (La. App. 1 Cir. 3/25/11), 2011 WL 1103151, *5 (unpublished). Therefore, Mr. Brumfield's request for sanctions is not properly before this court.

## CONCLUSION

For reasons stated herein, we vacate the September 20, 2021 Amended Judgment in part and affirm it in part. We vacate the Amended Judgment insofar as it:

---

[11] In their brief, the Aldermen argue that they presented evidence showing that they informed Mr. Brumfield that they did not have email threads and text messages responsive to his PRR. The alleged "evidence" referenced by the Aldermen consists of documents attached to a memorandum they filed in support of their motion for new trial. However, documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. *Foster v. Bias,* 19-1674 (La. App. 1 Cir. 9/28/21), 2021 WL 4438758, *3. Further, no evidence was introduced at the hearing on the motion for new trial. Thus, this court cannot consider documents that, even if physically placed in the record, were not formally admitted into evidence. *Id.*

14

(1) orders Shelia Martin to produce any records to Charles Brumfield, (2) assesses a $14,000 civil penalty against Shelia Martin, and (3) orders that Shelia Martin is liable, in solido, with any other party for all costs and attorney fees. In all other respects, we affirm the Amended Judgment. We assess appeal costs one-half to Ricky Coleman and one-half to Debrah Cyprian.

**AFFIRMED IN PART; VACATED IN PART.**

15