PENZATO, J.
I ¡.This appeal arises from prolonged litigation pertaining to the succession of Frank Crate. Lydia Teixeira, succession administratrix and daughter of Frank Crate, appeals the trial court’s amended judgment granting the motion for summary judgment filed by Clara Omlor Crate and disposing of the disputed property. For the reasons set forth below, we reverse the amended judgment and remand.
FACTS AND PROCEDURAL HISTORY
This matter began when Clara Omlor Crate filed a petition for divorce against Frank Crate on May 6, 1994 in the Twenty-First Judicial District Court, Parish of Tangipahoa, Docket No. 9401422, Division H. On the same date, Frank and Clara Crate entered into an agreement entitled, “Act of Partition and Settlement of Community Property” (Partition Agreement), which was executed before a notary and two witnesses. Sections (1) and (2) of the Partition Agreement transferred certain property to each party, Section (3) of the Partition Agreement listed additional immovable and movable property that was to “remain owned in indivisión in equal portions by the parties.” The property referred to in Section (3) of the Partition Agreement included a' piece of immovable property and the following movable property:
a. $15,000.00 Certificate of Deposit, # 11074 at First National Bank of Denham Springs;
b.. $30,000.00 Certificate of Deposit, # 11051 at First National Bank of Denham Springs;
c. 1989 Nissan Maxima;
d. 1979 Pickup Truck;
*1166 e. United States Savings Bonds;
f. Stocks;
g. Whole life policies;
⅛. The Travelers Life Insurance Company Group policy # G-104410, account # 224349870; and
i. All furnishings, fixtures, appliances and furniture.
Additionally, this section contained the following provision:
All property in Section 3 is subject to a survivorship clause and all property in Section 3 of this Act shall belong exclusively and solely to the survivor and said property shall form no part of the estate of the party which shall pre-decease the other.
Section (3) of the Partition Agreement also granted Prank Crute a “usufruct” for life over the immovable property listed and a “usufruct” over the 1989 Nissan Maxima. A judgment of divorce was entered by confirmation of default on July 4, 1994. Following the divorce, the trial court signed another judgment on October 6, 1994, entitled “Joint Motion and Order for Domestic Relations Order,” which approved the Partition Agreement and made it a judgment of the trial court.
On June 10, 2005, Prank Crute executed a last will and testament, leaving three of his children each a sum of money and “the balance of [his] estate” to his daughter, Ms. Teixeira. Frank Crute died on June 25, 2005. On February 2, 2006, Ms. Teix-eira, as the succession administratrix for the Succession of Frank Edward Crute, filed a Petition to Set Aside Partition and Settlement of Community Property against Ms. Crute, claiming that the sur-vivorship clause contained in Section (3) of the Partition Agreement was contrary to Louisiana law and that the entire community property settlement should be set aside as null and void. The petition was filed in the Twenty-First Judicial District Court, Parish of Livingston, Docket No. 110,709, Division A (Succession Suit). On August 3, 2010, the trial court signed an order, noting that counsel for both parties agreed to transfer the Succession Suit to the Twenty-First Judicial District Court, Parish of Tangipahoa, Division A.
On April 29, 2014, Frank Crate’s ex-wife, Ms. Crate, filed a Petition for Judicial Partition of Community Property in the Divorce Suit, seeking a ^declaratory judgment validating and enforcing the Partition Agreement and the October 6, 1994 judgment (Divorce/Declaratory Suit). Shortly thereafter, Ms. Crate, as the defendant, filed a motion for summary judgment in the Succession Suit on July 10, 2014, claiming that the Partition Agreement was made part of the judgment of divorce on October 6, 1994, and that the survivorship clause was valid.
Ms. Crute subsequently filed an ex parte motion to transfer and consolidate the Divorce/Declaratory Suit and the Succession Suit, asserting that Ms. Teixeira agreed to the transfer and consolidation. On April 1, 2015, the trial court signed the order transferring the Divorce/Declaratory Suit from Division H to Division A and consolidating it with the Succession Suit.
After the transfer and consolidation, Ms. Crute filed a motion for summary judgment in the Divorce/Declaratory Suit on April 20, 2015, based on the same facts and legal arguments made in the earlier filed motion for summary judgment in the Succession Suit. Ms. Crute filed four “supplemental” memoranda in support of her motion for summary judgment, all of which assert her same argument, that the Partition Agreement was valid, as made in her memorandum in support of the motion for summary judgment filed in the Succession Suit seeking to dismiss Ms. Teixeira’s suit to set aside the Partition Agreement. The *1167 only evidence submitted was Ms. Crate’s affidavit, attached to her third supplemental memorandum in support of motion for summary judgment, and an excerpt of a transcript of her testimony at a March 17, 2015 hearing. The trial court held a hearing on both ^motions for summary judgment on June 1, 2015, and took the matter under advisement.[1] The trial court issued one set of written reasons for judgment in the consolidated matter on June 30, 2015, but issued two separate judgments.
On July 23, 2015, the trial court signed a judgment in the Succession Suit granting Ms. Crate’s July 10, 2014 motion for summary judgment and dismissing Ms. Teix-eira’s petition with prejudice. On August 31, 2015, the trial court granted a suspen-sive appeal from the July 23, 2015 judgment. Ms. Teixeira failed to timely file a brief within the period of time provided by Rule 2-12.7 of the Uniform Rules of the Courts of Appeal, and this court dismissed that appeal. Succession of Frank Edward Crute v. Clara Omlor Crute, 2015-1912 (La. App. 1 Cir. 3/2/16)(unpublished).
On December 7, 2015, the trial court signed a judgment in the Divorce/Declaratory Suit which ordered Ms. Crute be declared the sole owner of all the property listed in Section (3) of the Partition Agreement. The judgment purported to order Ms. Teixeira to deliver those properties and an accounting to Ms. Crute, but contained no specific dates. Also on December 7, 2015, the trial court set a hearing for the previously filed motion for new trial filed by Ms. Teixeira. A hearing on the motion for new tidal took place on January 14, 2016, at which the trial court denied the motion and issued a judgment in accordance therewith on January 25,2016.
After Ms. Teixeira filed an appeal, this court issued a Rule to Show Cause on June 22, 2016, and remanded the matter for the limited'purpose of allowing the trial court to sign an amended judgment in accordance with La. C.C.P. art. 1951.
IfiOn September 6, .2016, the trial court signed an amended judgment granting the motion for summary judgment filed April 20, 2015, and ordering that Ms. Crute be declared the sole owner of all property listed in Section (3) of the Partition Agreement and that Ms. Teixeira deliver the property to Ms. Crute by a certain date. It is from this judgment that Ms. Teixeira appeals. As the September 6, 2016 amended judgment corrected both issues that were the subject of our show cause order—the unspecific decretal language and specificity as to the delivery of the property to Ms. Crute—we maintain this appeal.
ERRORS
Ms. Teixeira asserts that the trial court lacked subject matter jurisdiction because the matter was improperly transferred and consolidated. She also claims that the two lawsuits were improperly consolidated into the later-filed or higher numbered lawsuit. Finally, she claims that the ruling of the trial court divesting Frank Crate’s heirs of his half of the partitioned property in the Divorce/Declaratory Suit was erroneous because the Partition Agreement was in violation of La. C.C.P. art. 969, as both parties were not represented by counsel *1168 and the judgments were presented ex parte by Ms. Crate.
RAW AND DISCUSSION
Jurisdictional Issue
Ms. Teixeira claims that the trial court did not have subject matter jurisdiction, asserting that a family court matter could not be transferred and consolidated into a non-family court matter. The Twenty-First Judicial District Court was originally established by La. R.S. 13:621 comprising the parishes of Tangipahoa, Livingston, and St. Helena. The legislature amended La. R.S. 13:621 and determined that the Twenty-First Judicial District Court would have two judges by 1966 La. Acts, Ex. Sess. No. 7, § 1. Subsequently, the statute was ^amended numerous times and currently La. R.S. 13:621.21 provides, in pertinent part:
A. The Twenty-First Judicial District Court shall have nine judges.
B. (1) The judgéship comprising Division H shall be abolished effective midnight, December 31, 2014.
(2) There is hereby created a new judgeship effective January 1, 2016. This judge and his successors shall preside over Division J, which is hereby created for purposes of nomination, election, and subject matter. The subject matter jurisdiction of Division J is limited, under the provisions of Article V, Section 16(A) of the Constitution of Louisiana, to family and juvenile matters as provided by law. For purposes of this Subsection, “family matters” shall include all actions arising under Titles V and VII of Book I and Title VI of Book III of the Louisiana Civil Code, adoptions arising under the Louisiana Civil Code and the Louisiana Children’s Code, actions involving protection from family violence pursuant to R.S. 46:2131 et seq., and actions for enforcement, collection of support, and paternity pursuant to R.S. 46:236.6. The jurisdiction or term of office of any other judge of the district shall not be affected or reduced by the creation of this judgeship.
$ S ⅜
C.(1) The judgeship comprising Division G shall be abolished effective midnight, December 31,2014.
(2) There is hereby created a new judgeship effective January 1, 2015. The judge and his successors shall preside over Division K, which is hereby created for purposes of nomination, election, and subject matter. The subject matter jurisdiction of Division K is limited, under the provisions of Article V, Section 15(A) of the Constitution of Louisiana, to family and juvenile matters as provided by law. For purposes of this Subsection, “family matters” shall include all actions arising under Titles V and VII of Book I and Title VI of Book III of the Louisiana Civil Code, adoptions arising under the Louisiana Civil Code and the Louisiana Children’s Codes actions involving protection from family violence pursuant to R.S. 46:2131 et seq., and actions for enforcement, collection of support, and paternity pursuant to R.S. 46:236.5. The jurisdiction or term of office of any other judge of the district shall not be affected or reduced by the creation of this judgeship. (Emphasis added).
Ms. Teixeira argues that the legislative enactment of La. R.S. 16:621.21 caused the reallotment of this matter to Division H, which became Division J. She further claims that Divisions A through F do not have subject matter jurisdiction over family law matters, and that the trial court in this matter had no subject matter | ¿jurisdiction over the present case. Louisiana Code of Civil -Procedure article 3 provides:
*1169 The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void.
The Louisiana Constitution vests the district courts with original jurisdiction over all “civil and criminal matters” except as otherwise authorized by the constitution or except as provided by law in workers’ compensation matters. La. Const, art. 5, § 16(A), Louisiana Constitution article 5, § 15(A) permits the legislature to establish trial courts of limited jurisdiction. While La. R.S. 13:621.21 limits the subject matter of Divisions J and K, it does not divest or restrict the subject matter jurisdiction of Division A.
Ms. Teixeira asserts that once Divisions J and K were formed, Divisions A through F were divested of subject matter jurisdiction over family matters. Although not cited by either party, La. R.S. 13:1401(A), which established the Family Court in the Nineteenth Judicial District Court, is instructive as to the distinction between that statute and La. R.S. 13:621.21. In vesting the East Baton Rouge Parish Family Court, the legislature vested that court with exclusive jurisdiction to hear cases involving family matters. , La. R.S. 13:1401(A). The Louisiana Supreme Court held that by vesting the East Baton Rouge Parish Family Court with exclusive jurisdiction over such matters, the legislature simultaneously divested the Nineteenth Judicial District Court of subject matter jurisdiction over those family matters. Welborn v. 19th Judicial District Court, 2007-1087 (La. 1/16/08), 974 So.2d 1, 9. The Court recognized that La. Const. art. 5, § 18 authorizes the legislature to not only determine the subject matter jurisdiction of the family courts, but also to divest a district court that shares a | ideographic jurisdiction with a family court of that same subject matter jurisdiction. Welborn, 974 So.2d at 9.
Louisiana Revised Statute 13:621.21 does establish limited jurisdiction for Divisions J and K, but it does not give those courts exclusive jurisdiction over family court matters. Contrary to La. R.S. 13:1401(A), La. 13:621.21(B)(2) and (C)(2) specifically state, “[t]he jurisdiction or term of office of any other judge of the district shall not be affected or reduced by the creation of this judgeship.” While the legislature has the authority to divest a district court of family matters, it specifically did not do so in this instance. Therefore, the trial court had subject matter jurisdiction in the present matter.
Ms. Teixeira also contends that the trial court improperly transferred and consolidated the lower numbered case, the Divorce/Declaratory Suit, into the higher numbered case, the Succession Suit, in violation of La. C.C.P. art. 1561(A). Louisiana Code of Civil Procedure article 253.2 provides for .the transfer and reassignment of cases as follows:
After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561, However, the ’supreme court, by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated. (Emphasis Added).
In the present matter, all parties did agree to transfer and consolidate the Divorce/Declaratory Suit and the Succession Suit into Division A. The August 3, 2010 *1170 order of the trial court notes that counsel for both parties agreed to transfer the Succession Suit from Livingston Parish to Tangipahoa Parish to Division A. Although the order specifically stated Division A, the Succession Suit was given Docket No. 2010-0003223, Division E. While no transcript appears in the record, from the minute entries it is evident that on September 12, 2011, for oral reasons | ingiven, the Succession Suit was transferred from Division E to Division A. The Division A judge ruled on June 10, 2013, that the matter (the Succession Suit) was in the correct division. (Again no transcript appears in the record from this hearing). On March 17, 2015, the Divorce/Declaratory Suit was set for a bench trial, but the trial court heard oral arguments regarding the jurisdiction of Divisions J and K as to family matters and noted that the parties entered into a stipulation that “[b]y agreement of parties, the case will be consolidated with the pending matter in Division A set for May 4, 2015.” On March 30, 2015, Ms. Crute filed an ex parte motion to transfer and consolidate based on judicial economy and consistency referencing the agreement of the parties, which was signed by the trial court on April 1, 2015.
As a general rule, a trial court has wide latitude with regard to the consolidation of suits pending in the same court and its decision in that regard will not be disturbed absent an abuse of discretion. In re Succession of Cannata, 2014-1546 (La. App. 1 Cir. 7/10/15), 180 So.3d 355, 364, writ denied, 2015-1686 (La. 10/30/15), 180 So.3d 303. While subject matter jurisdiction cannot be conferred by consent of the parties, transfer and consolidation may be effected from a section or division to another by agreement of all parties. La. C.C.P. arts. 3 and 253.2. We also note that the issue of the limited jurisdiction of Divisions J and K as to family matters was considered in the first filed and lowered numbered action, the Divorce Suit, No. 09041422. Thereafter, the trial court consolidated the cases into the higher numbered case in conformity with the agreement of the parties. Considering the common issues of fact and law presented in these matters, the trial court did not abuse its discretion in ordering their transfer and consolidation in accordance with the parties’ agreement.
juSummary Judgment
Former Louisiana Code of Civil Procedure article 966(B)(2) provides that summary judgment “shall be rendered forthwith” when “there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”[2] After adequate discovery, a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. arts. 966(B)(2) & (C)(1) (prior to amendment by 2015 La. Acts, No. 422).[3] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. See La. C.C.P. art. 966(A)(2).
*1171 The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. See La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422).[4] If the mover points out that there is an absence of factual support for one or more elements essential to his opponent’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422). If the nonmoving party fails to make this requisite showing, there is no genuine issue of material fact, and summary judgment should be granted. See La. C.C.P. art. 966(C)(2) (prior to amendment by 2015 La. Acts, No. 422). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of his opponent’s claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. LeBlanc v. Bouchereau Oil Co., Inc., 2008-2064 (La. App. 1 Cir. 5/8/09), 15 So.3d 152, 155, writ denied, 2009-1624 (La. 10/16/09), 19 So.3d 481.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. East Tangipahoa Development Company, LLC v. Bedico Junction, LLC, 2008-1262 (La. App. 1 Cir. 12/23/08), 5 So.3d 238, 243, writ denied, 2009-0166 (La. 3/27/09), 5 So.3d 146. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Pumphrey v. Harris, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
Evidence and Analysis
Ms. Teixeira argues on appeal that the judgments of divorce and partition, signed on July 4, 1994, and October 6, 1994, respectively, were improperly rendered, because Frank Crute was not represented by counsel and the Partition Agreement violated several rules of testamentary disposition, such as La. C.C. art. | ¶¾1571, which prohibits more than one person executing a testament in the same instrument, and La. C.C. art. 1606, which allows a testator to revoke his testament at any time. Ms. Teixeira also relies on La. C.C. art. 805, which provides:
A co-owner may freely lease, alienate, or encumber his share of the thing held in indivisión. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivisión.
Ms. Crate responds that the survivorship clause contained in Section (3) of the Partition Agreement, and made part of the October 6, 1994 judgment, was agreed to by contract and legally permitted. She re *1172 lies on Pope v. Anderson, 13 La.Ann. 538 (1858), and Parquin v. Finch, 1 Mart.(n.s.) 465 (1823), with regard to the validity of the survivorship clause.
We find that the present case does not necessarily turn on the laws of testamentary disposition, and that the laws of co-ownership have been amended since the 1858 and 1823 cases relied upon by Ms. Grate. This matter began as a petition to set aside the Partition Agreement, which was incorporated into the October 6, 1994 judgment. The trial court granted a summary .judgment in favor, of Ms. Crate based on the validity of the Partition Agreement. The trial court did note, however, that it is “somewhat unusual that two parties getting a divorce would contract such that they would leave their interest in and to immovable property to whichever spouse lived the longest.”
In rendering the summary judgment, , the trial court determined that the Partition Agreement was .not a nullity. We must determine if the trial court was corr rect in its assessment. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, |14to render judgment on the record by applying the correct law and determining the essential material facts de novo. Evans v. Lungrin, 1997-0541 (La. 2/6/98), 708 So.2d 731, 735.
The October 6, 1994 judgment, incorporating the Partition Agreement,, is based on a contract, A contract.is null when the requirements for its formation have not been met. La. C.C. art. 2029. In the present case, the Partition Agreement required Frank Crute to hold the property listed in Section (3) in indivisión for the rest of his life. The current civil code forbids this practice, as La. C.C. art. 2369.8, effective January 1, 1996, states, in pertinent part:
A spouse has the right to demand partition of former community property at any time. A contrary agreement is absolutely null.
However, the judgment at issue in this matter, is dated October 6, 1994, and the Partition Agreement, upon which that judgment was based, was entered into on May 6,, 1994. Therefore, we must determine under the law in effect at the time whether the contract entered into by the parties was null.
Prior to the enactment'of La. C.C. art. 2369.8, former spouses remained co-owners of property not partitioned. Terrebonne v. Theriot, 1994-1632 (La. App. 1 Cir. 6/23/95), 657 So.2d 1358, 1362, writ denied, 1995-2249 (La. 11/27/95), 663 So.2d 743." The use and management of a thing held in indivisión is determined by agreement of all the co-owners. La. C.C. art. 801. A co-owner may freely lease, alienate, or encumber his share of the thing held in indivisión..The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivisión. La. C.C. art, 805.
• Louisiana Civil Code article 807 provides as follows:
No one may be compelled to hold a thing in indivisión with another unless the contrary has been provided by law or juridical act.
Any co-owner has a right to demand partition of a thing held in indivisión. Partition may. be excluded by agreement for up to | ^fifteen years, or for such other period as provided in R.S. *1173 9:1702 or other specific law. (Emphasis added).
A juridical act is a. lawful volitional act intended to have legal consequences. Black’s Law Dictionary (10th ed. 2014). While an agreement between spouses is considered a juridical act, we noté that such an act must be lawful. In the'present case, Section (3) of the Partition Agreement violated the fifteen-year time limitation of Article 807, as it required Frank Crute to hold the property in indivisión for the remainder of his-life, an indeterminate amount of time. See La. C.C. art. 2347, comment (c).
The court must now determine if Section (3) of the Partition Agreement was absolutely null at the time the Partition Agreement was signed. The two types of nullities provided for in the civil code are absolute nullities, governed by La. C.C. art. 2030, and relative nullities, governed by La. C.C. art. 2031. At issue here is whether the requirement that the property listed in Section (3) of the Partition Agreement remain owned in indivisión for an indeterminate amount of time, which violates the fifteen year time limitation, contained in Article 807, renders that section absolutely null or relatively null as defined in the following codal provisions.
Article 2030 provides:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
Article 2031 provides:
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
■ |! «Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.
Accordingly, classification of the nullity involved here depends on" whether Article 807 provides a “rule of public order” intended to protect a large class of persons or whether it simply provides a rule “intended for the protection of private parties.” See La. C.C. arts. 2030 & 2031. Resolution of this threshold issue determines whether the trial court correctly determined that the Partition Agreement was valid. See id.; see also Radcliffe 10, L.L.C. v. Burger, 2016-0768 (La. 1/25/17), 219 So.3d 296, 300.
Limitations on the right to partition are to be strictly construed, Campbell v. Pasternack Holding Co., Inc., 625 So.2d 477, 483. (La. 1993). It must be shown that an agreement by the parties not to partition is definite and certain. Walker v. Chapital, 218 La. 663, 668, 50 So.2d 641, 642 (1951). An agreement between joint heirs to postpone partition until realty values improved and a fair price could be obtained was held to be unenforceable for indefiniteness. Giardina v. Giardina, 181 La. 42, 158 So. 615, 616 (1935). Co-owners of property cannot be compelled to own property in indivisión. La. C.C. art. 807; Pugh v. NPC Services, Inc., 1997-2360 (La. App. 1 Cir. 11/6/98), 721 So.2d 1056, 1057, writ denied, 1998-3052 (La. 2/5/99), 738 So.2d 4.
The underlying rationale behind the right to partition is that it would be against public policy for property to be taken out of commerce and rendered unusable because of fragmented ownership. La- *1174 cassane Co., Inc. v. Jardin Minerals Co., 2002-1491 (La. App. 3 Cir. 5/28/03), 847 So.2d 704, 709 n.9. A co-owner’s right to partition of a thing held in common is an incident of ownership and is absolute in the absence of an agreement excluding partition for no more than fifteen years. Harris v. Harris, 29,084 (La. App. 2 Cir. 1/22/97), 687 So.2d 673, 674 (interpreting the pre-1996 version of La. C.C. art. 2369.8). Conditions that 117prevent the sale or mortgage of property are contrary to the public policy of the State and must be considered as not written as it effectively takes the property out of commerce. Ada C. Pollock-Blundon Ass’n, Inc. v. Evans’ Heirs, 273 So.2d 552, 555 (La. App. 1 Cir. 1973). Perpetual options that would take property out of commerce are prohibited because they violate the doctrine of ownership established by the Louisiana Civil Code. Becker & Assocs., Inc. v. Lou-Ark Equip. Rentals Co., 331 So.2d 474, 476 (La. 1976) (finding that option was null and void for failure to stipulate a time period for the acceptance of the promise to sell property). While Section (3) of the Partition Agreement did not take the property in the instant case out of commerce perpetually, it did contractually remove it from commerce for an indefinite period of time, which we find violated Article 807. Compare Holland v. Holland, 2013-636 (La. App. 3 Cir. 12/11/13), 129 So.3d 844, 848 (spouses cannot deprive creditors of their rights by filing extrajudicial partitions of their community property).
Taking into consideration the cases cited above, we find that Section (3) of the Partition Agreement violated a rule of public order when it required Frank and Clara Crute to each hold property in indi-visión without partition until his or her death in violation of Article 807. The agreement not to partition by the spouses was indefinite and uncertain as to the duration in violation of the public policy of this state. See Walker, 218 La. at 669, 50 So.2d at 642; Giardina, 181 La. 42, 158 So. at 616. Further, while Frank Crute subsequently expired within the fifteen year time period, reformation of the original contract by this court to limit its duration would be improper.
The law with regard to reformation of contracts is succinctly set forth in Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d 466, 478-79 (La. App. 1 Cir.), writ denied, 638 So.2d 1094 (La. 1994), as follows:
11sWith regard to reformation, a written instrument may be reformed against the original parties and their privies to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties. Placid Refining Company v. Privette, 523 So.2d 865, 868 (La. App. 1 Cir.), writ denied, 524 So.2d 748 (La. 1988); First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d 280, 285 (La. App. 1 Cir. 1986), writ denied, 502 So.2d 103 (La. 1987). The error or mistake must be mutual. Placid Refining Company v. Privette, 523 So.2d at 868; First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d at 285. Additionally, before an instrument will be reformed, there must be clear proof of the antecedent agreement as well as the error in committing it to writing. Pat S. Todd Oil Company, Inc. v. Wall, 581 So.2d 333, 336 (La. App. 3 Cir.), writ denied, 585 So.2d 569 (La. 1991); Placid Refining Company v. Privette, 523 So.2d at 868; First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d at 285. The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence. Pat S. Todd Oil *1175 Company, Inc. v. Wall, 581 So.2d at 336; Placid Refining Company v. Privette, 523 So.2d at 868; First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d at 285. Parol evidence is not offered to vary the terms of the written instrument, but rather to show that the writing does not express the true intent or agreement of the parties. Placid Refining Company v. Privette, 523 So.2d at 868; First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d at 285.
Furthermore, reformation of a contract is an equitable remedy which must be affirmatively sought by the party claiming the relief, and that party must bear the burden of establishing mutual error and must establish it by clear and convincing evidence. Ferrara v. Louisiana Elastomer, LLC, 2012-1141 (La. App. 3 Cir. 3/27/13), 113 So.3d 361, 365 (finding that the defendant failed to seek such relief and did not mention any allegation of mistake until opposing the motion for partial summary judgment).
As stated in Walker v. Jim Austin Motor Company, Inc., 162 So.2d 135, 138 (La. App. 1 Cir.), writ denied, 246 La. 354, 164 So.2d 353 (La. 1964), reformation of contracts is an equitable remedy and lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true [^contract of the parties. It is also well-settled that equity will reform a contract but will not make a new one. Walker, 162 So.2d at 139.
This court refused to reform an operating agreement when the record was devoid of proof of error in Prentice v. Amax Petroleum Corp., 220 So.2d 783, 789 (La. App. 1 Cir.), writ denied, 254 La. 455, 223 So.2d 867 (1969), which stated:
“When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties. ‘ and that: ‘Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but so support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.” Standard Oil Co. of La. v. Futral, 204 La. 215, 15 So.2d 65, at 75 [(1943)].
In the present case no party affirmatively sought or put on any evidence as to a mutual error in order to reform the contract. There is nothing in the record to show that the Partition Agreement was not the true intent of the parties. There is no clear proof of an antecedent agreement or that there was error in committing it to writing.
Therefore, Section (3) of the Partition Agreement was absolutely null, as was that portion of the October 6, 1994 judgment approving the Partition Agreement. A judgment based on an absolutely null contract is an absolutely null judgment which does not prescribe and may be attacked at any time. Bass v. Laporte, 1995-867 (La. App. 1 Cir. 4/4/96), 672 So.2d 1121, 1124, writ granted in part and judgment set aside on other grounds, 1996-1651 (La. 10/25/96), 681 So.2d 344. Based on this court’s finding as to the nullity of Section (3) of the Partition Agreement, the basis of the motion for summary judgment and the question of law presented therein, we pretermit a de *1176 termination as to- the remaining arguments of Ms. Teixeira in .assignment of error number (3) as to the validity of the entire Partition Agreement.
IjjLaw of the Case
.The motion for summary judgment before us was rendered in the Divorce/Declaratory Suit, in which Ms. Crute is a plaintiff. Ms. Crute argues that -because the trial court already granted summary judgment in the Succession Suit, in which Ms. Crute was a defendant, and determined that the Partition Agreement was valid, the law-of-the-case doctrine applies to prevent this court from addressing the validity of the Partition Agreement. She further points out that the trial court found that the Partition Agreement was “neither a will or contemplated to be a will.” The trial court issued the July 23, 2015 judgment dismissing Ms. Teixeira’s petition to set aside the October 6, 1994 judgment. Ms. Crute asserts that the “July 23, 2015 judgment is law of the case that the Partition [Agreement] is a valid ‘contractual agreement’ and not a will.”
The law-of-the-case doctrine embodies the principle that an appellate court generally does not revisit its own rulings of law on a subsequent appeal in the same case. See Trans Louisiana Gas Co. v. Louisiana Ins. Guar. Ass’n, 1996-1477 (La. App. 1 Cir. 5/9/97), 693 So.2d 893, 896, writ not considered, 1995-0853 (La. 4/21/95), 653 So.2d 555. The law-of-the-case doctrine is a discretionary guide that relates to (a) the binding force of a trial judge’s ruling during the later stages of trial; -(b) the conclusive effects of appellate. rulings at trial on remand; and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Jones v. McDonald’s Corp., 1997-2287 (La. App. 1 Cir. 11/6/98), 723 So.2d 494, 494, writ not considered, 1998-3057 (La. 2/5/99), 737 So.2d 738, citing Louisiana Land and Exploration Co. v. Verdin, 1995-2579 (La. App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 1996-2629 (La. 12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely | aithose arising from the full appeal process. Jones, 723 So.2d at 494, citing Brumfield v. Dyson, 418 So.2d 21, 23 (La. App. 1 Cir.), writ denied, 422 So.2d 162 (La. 1982). The reasoning behind the law-of-the-case doctrine is to avoid re-litigation of the same issue, to promote consistency of result in the same litigation, and to promote 'efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Jones, 723 So.2d at 494, citing Louisiana Land and Exploration Co., 681 So.2d at 65. Re-argüment in the same case of a previously decided point will be barred where there is simply a doubt as to the" correctness of the earlier ruling. The law-of-the-case‘dóctrine is not an inflexible law, thus appéllate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. Jones, 723 So.2d at 494-95. The doctrine is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Jones, 723 So.2d at 494, citing Glenwood Hosp., Inc. v. Louisiana Hosp. Serv., Inc., 419 So.2d 1269, 1271 (La. App. 1 Cir. 1982).
We find that this is á case where palpable error has occurred, or if the discretionary law-of-the-case doctrine were applied, manifest injustice would occur. After the trial court heard, both motions for summary judgment on June-1, 2015, it issued one set of written reasons on June 30, 2015. In those reasons, the trial court *1177 stated that it found that the there was no intent for the Partition Agreement to be a will and that the survivorship clause contained in Section (3) of the Partition Agreement was valid. For the reasons stated earlier regarding Section (3)’s intent to take the property out of commerce, the judgment granting the motion for summary judgment and finding Section (3) of the Partition Agreement valid is palpable error and would result in manifest injustice if law-of-the-case were applied. As stated above, it is against public policy to require property to remain held in indivi-sión between co-owners, and at the time the Partition' | ^Agreement was signed, such a clause could only be enforced for up to fifteen years. La. C.C.P. art. 807. Therefore, law-of-the-case-doctrine does not apply in the present matter to preclude our determination as to the validity of Section (3) of the Partition Agreement in the matter before us, the motion for summary judgment in which Ms. Crute is a plaintiff.
Exception of Res Judicata
Ms. Crute filed in this court an exception raising the objections of res judicata and prescription, asserting that more than 20 years have elapsed since the October 6, 1994 judgment incorporating the Partition Agreement and claiming that the judgment was final as no petition for new trial or to appeal or annul had been filed. We have previously determined that Section (3) of the Partition Agreement was absolutely null. The October 6, 1994 judgment incorporated the entire Partition Agreement, including Section (3).
We must first determine if the October 6, 1994 judgment, which was based on a portion of an absolutely null contract, can support an exception raising the objection of res judicata, A null judgment is never valid and any proceedings conducted under the authority of a null judgment are absolutely void. If a judgment is an absolute nullity, such nullity may be invoked by anyone against whom it is interposed and whenever and wherever it is asserted. Frisard v. Autin, 1998-2637 (La. App. 1 Cir. 12/28/99), 747 So.2d 813, 819 n. 11, writ denied, 2000-0126 (La. 3/17/00), 756 So.2d 1145 (only actions to annul relatively null judgments must be brought in the trial court that rendered the judgment). A person with interest may show such nullity in collateral proceedings at any time and before any court, for absolutely null judgments are not subject to the venue and the delay requirements of the action of nullity. Louisiana Public Defender Bd. v. Dorroh, 2015-1277 (La. App. 1 Cir. 5/12/16), 195 So.3d 522, 527, citing Roach v. Pearl, 1995-1573 (La. App. 1 Cir. 5/10/96), 673 So.2d 691, 693; see also Reed v. Louisiana Bd. of Pharmacy, 1996-1792 (La. App. 1 Cir. 9/19/97), 700 So.2d 926, 928. Furthermore, while relatively null judgments must be attacked directly and within the time limitation set forth in La. C.C.P. art. 2004, absolutely null judgments may be attacked collaterally, at any time, by rule or by any other method. In re J.E.T., 2016-0384 (La. App. 1 Cir. 10/31/16), 211 So.3d 575, 581. Such a collateral attack may include the assertion of the absolute nullity of a judgment as an affirmative defense, such as in an answer, by exception, or by contradictory rule or motion. In re J.E.T., 211 So.3d at 581.
Besides being able to be collaterally attacked, an absolutely hull judgment is not res judicata. In re Raz, 2003-0893 (La. App. 1 Cir. 02/23/04), 871 So.2d 363, 367, legislatively overruled on other grounds, Joshua Inv. Corp. v. Home Sales Counseling, Inc., 39,251 (La. App. 2 Cir. 1/19/05), 892 So.2d 151, 158, writ denied, 2005-0442 (La. 4/29/05), 901 So.2d 1066, and writ denied, 2005-0795 (La. 5/20/05), 902 So.2d 1051. As stated previously, an *1178 absolutely null judgment is never valid and any proceedings conducted under the authority of a null judgment are absolutely void. Frisard, 747 So.2d at 820. Therefore, we deny the exception raising the objection of res judicata.
We also note that an action for annulment of an absolutely null contract does not prescribe. La. C.C. art. 2032; Bunge North America, Inc. v. Board of Commerce & Industry and Louisiana Dep’t of Economic Development, 2007-1746 (La. App. 1 Cir. 5/2/08), 991 So.2d 511, 524, writ denied, 2008-1594 (La. 11/21/08), 996 So.2d 1106. Therefore, we deny the exception raising the objection of prescription.
Answer to Appeal
Ms. Crute filed an answer to appeal seeking damages, attorney fees, and costs for frivolous appeal. As Ms. Crute has not prevailed on appeal, the appeal filed by Ms. Teixeira is not frivolous. Therefore, we deny the answer to appeal.
—[.^CONCLUSION
For the above and foregoing reasons, the trial court’s September 6, 2016 amended judgment is reversed. We remand the matter to the trial court for further proceedings consistent with this opinion. We deny the exception raising the objections of res judicata and prescription. The answer to the appeal seeking frivolous appeal damages is denied. All costs of this appeal are assessed against Clara Omlor Crute.
APPEAL MAINTAINED; JUDGMENT REVERSED; REMANDED; EXCEPTION DENIED; ANSWER TO APPEAL DENIED.
McDonald, J., concurs.

. The trial court previously heard and granted the summary judgment filed by Ms. Crute in the Succession Suit on December 1, 2014, and signed a judgment in accordance therewith. However, the trial court granted a motion for new trial on this judgment on March 24, 2015. The June 1, 2015 hearing encompassed the new trial on the December 1, 2014 judgment from the July 10, 2014 motion for summary judgment in the Succession Suit (where Ms. Crute is a defendant) and the April 20, 2015 motion for summary judgment in the Divorce/Declaratory Suit (where Ms. Crute is a plaintiff).

. Article 966 was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 provides, "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.” As the motion for summary judgment at issue in this matter was pending as of January 1, 2016, we apply the prior version of Article 966.

. Now La. C.C.P. art. 966(A)(3).

. Now La. C.C.P. art. 966(D)(1).